## ASTRID ELLEN POULSEN WEIL
### vs.
## HANS RASMUS POULSEN

Superior Court     New London County     File #10374

Present:  Hon. ALLYN L. BROWN, Judge.

Nathan Aaron,
Benjamin A. Markinan,     Attorneys for the Plaintiff.

L. Horatio Bigelow,
Richard H. McIntyre, of N. Y., Attorneys for the Defendant.

## MEMORANDUM FILED MAY 31, 1935.

BROWN, J.   In this action for damages for the defendant's breach of his contract under seal to support the plaintiff and their adopted daughter, the following facts are undisputed upon the evidence; (1) on April 30, 1910, the parties intermarried at Copenhagen, Denmark; (2) on February 13, 1919, at Brooklyn, N. Y., where the parties then lived, they legally adopted Mabel Carter, an infant child; (3) shortly before August 1923 the parties separated after having lived together as husband and wife from their marriage until that time; (4) on August 23, 1923, they executed **Exhibit B** here sued upon, a so-called "separation agreement"; (5) among his other obligations thereunder, the defendant agreed by paragraph 6 to pay the tuition of said daughter in private school and $15 per week to the plaintiff for the first year, $20 per week for the second, and $25 per week from August 23, 1925 on, for the support and maintenance of herself and daughter during the period of his life; (6) the defendant who had fallen behind in the payment of these obligations in April, 1925, has paid nothing since then; (7) on February 3, 1925 the King of Denmark granted a divorce to the parties; (8)

on November 2, 1925 the plaintiff married her present husband Eric Weil; (9) on April 24, 1926 the defendant married his present wife; (10) since the separation the child has been with and cared for by the plaintiff; (11) in spite of repeated demands the defendant has failed and refused to pay anything since April, 1925 to the plaintiff for either her support or that of the child; and for the past two or three years the plaintiff and her child have been almost destitute, her income being limited to $5 or $6 per week which she has earned giving piano lessons.

The vital issue in the case is as to whether a certain writing in Danish, signed by both of the parties, and incorporated in or attached to said divorce decree of February 3, 1935, which is Exhibit 1 in evidence, was effective to discharge the defendant from his obligation to support the plaintiff and their child under the terms of Exhibit B above recited. This alleged agreement signed under date of December 10, 1924 is in the basis of the defendant's affirmative defense and cross-complaint. In response, the plaintiff has filed a denial, and as a special defense, that her signature to this alleged agreement was affixed by her either through mistake, or in consequence of the procuring fraud and misrepresentation of the defendant. As a further special defense the plaintiff alleges that the alleged agreement is void as against public policy, in that it purports to release the defendant from his legal duty of providing for his adopted minor daughter.

The scheming fraud, deceit, and trickery of this defendant in obtaining the plaintiff's signature to this paper under date of December 10, 1924, is too patent upon this record to merit any extended discussion. It is entirely in line with the course which he took in other matters as disclosed by the evidence,—attempting to accomplish his own selfish ends by the apparently easiest way, without regard to the violation of his own moral or legal obligations, or the effect of his course upon others. So when he had made a failure of his insurance business in 1924, he writes to the plaintiff (Exhibit H), "I'm ging out of business, for it will take too many years to square things up." And again as disclosed by this same exhibit, pursuant to his determination to obtain a Danish divorce from the plaintiff, for which there apparently was no sufficient ground, his intimation is that he stands ready to and does perjure himself to the effect that he has been guilty of infidelity. By his own testimony, his marriage to his present

wife has enabled him without work, to enjoy pleasure trips to Europe, Bermuda, and various parts of this land, together with the other usual concomitants that a man content to live on his wife's income can so graciously absorb. Whether he had met the present Mrs. Poulsen with the glowing prospects that that match in due time evidently suggested to him, before his efforts for divorce from the plaintiff began, does not appear from the testimony. The evidence does disclose, however, to my entire satisfaction, that for this or some other reason that seemed sufficient to the defendant, he persevered until the divorce from the plaintiff was obtained, and as the next step toward his new freedom, by deliberate fraud and trickery he procured the plaintiff's signature to the Danish translation incorporated in **Exhibit 1.**

Even without the light thrown on the defendant's motives and methods of operation by the evidence above recited, his own appearance on the witness stand, together with his admissions that he never either orally or in writing, subsequent to the execution of **Exhibit B,** either discussed with or suggested to the plaintiff any change of the terms of that agreement, which was the only such agreement between them, and his repeated references in his letters to the paper he was requesting the plaintiff to sign as "the enclosed translation of our agreement for separation" **(Exhibits F and I)** clearly demonstrate his fraudulent purpose and intent. These were, in short, by this method, to reduce his obligation under **Exhibit B** to contribute during the period of his life to the support of the plaintiff and their child, to one to do so "until she (the plaintiff) remarries" only, should he or she be divorced.

The "translation", except for the change in the vital particular just quoted, contains a brief version of the principal provisions of **Exhibit B.** I find that the plaintiff told the truth when she testified that by her reading of it she did not discover or suspect any change had been made in the essentials of the original agreement. The reference to it in the defendant's letter as "the enclosed translation of our agreement for separation", gave her no reason to look for any. I further find that she not only signed the writing in triplicate without knowing of this change, but also that her first knowledge of it was when Attorney Aaron told her of it at about the time this action was instituted. Her signature was therefore affixed by mistake, intentionally induced by the defend-

ant's deliberate fraud. There was no meeting of the minds, and this paper is entirely ineffective to modify the defendant's obligations under **Exhibit B,** in the slightest particular. 12 R.C.L. 388, §137; 6 R.C.L. 625, §44; Ursini vs. Goldman, 118 Conn. 554, 562.

The contract **Exhibit B,** having been executed in New York where both parties were then domiciled, and after they had actually separated, was valid under the law of that state. **Winter vs. Winter,** 191 N. Y. 462; **Clark vs. Fosdick,** 118 N. Y. 7; **Galusha vs. Galusha,** 116 N. Y. 635. It is accordingly enforceable here. **Maesch vs. Maesch,** 87 Conn. 377, 381. And since the support of the child as well as the wife is here **contracted** for, and under the other exceptional circumstances of this case, this is true notwithstanding the subsequent remarriage of the wife, **R.C.L. 951, Maxwell vs. Boyd,** 100 S. W. Rep. 540; Galusha vs. Galusha, supra; **Lester vs. Lester,** 169 N. Y. Supp. 267 and 1101; **Cary vs. Cary,** 112 Conn. 256, 262. The defendant's special plea of the six years statute of limitation is without merit, this contract being under seal, and therefore the seventeen years statute being applicable. **Section 6003, General Statutes, 1930 Revision.** Since the plaintiff's first knowledge of the defendant's fraud was practically contemporaneous with the bringing of this action, the defendant's special plea of laches is also without merit. The sale of the paintings by the plaintiff and any interference with the defendant's opportunities of seeing the child, of which he complains, being the result as they were, either of extreme necessity or the defendant's own conduct, or both constitute no material breach of performance on the plaintiff's part precluding her from relief in this action.

There is due the plaintiff under **Exhibit B** payments at the rate of $20 per week for 18 weeks up to August 23, 1925, or $360.00, plus payments at the rate of $25 per week for 509 additional weeks to date, or $12,725., making a total of $13,085. due the plaintiff upon her complaint. However, in addition to any proceeds of the defendant's property mentioned in **Exhibit B** which the plaintiff had sold and applied on account thereunder prior to April, 1925, she received $800. for his paintings in Detroit. Defendant is entitled to this credit. Judgment may be entered for the plaintiff, therefore, for $11,925., with costs. And it is further decreed that the claimed agreement incorporated in **Exhibit 1** is null and void, and the same is hereby cancelled and set aside.