THE STATE OF CONNECTICUT *vs.* ALFRED E. COOKE.

First Judicial District, Hartford, October Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 8th, 1929—decided January 6th, 1930.

*Reuben Taylor,* for the appellant (the accused).

*Donald Gaffney,* with whom, on the brief, were *Hugh M. Alcorn,* State's Attorney, and *Harold E. Mitchell,* for the appellee (the State).

HAINES, J. The accused and Madeline Marie Cooke were married in Hartford February 27th, 1923, and took up their residence with the mother of the accused on Wethersfield Avenue. The only child, a son, was born September 15th, 1925, and he is now with his mother. Marital difficulties arose the latter part of 1926, and on January 4th, 1927, the accused was summoned by the probation officer for the City Court of Hartford to appear before him in response to a complaint made to that official by the wife with regard to these marital difficulties. At that conference the accused was told by the probation officer that his wife might live separate from him, and in lieu of a court order, the accused and the wife entered into an agreement by which the former was to pay the wife $12 per week for the support of herself and child. The accused thereupon returned to his mother's home and the wife went to the home of her parents, and the accused made the payments of $12 per week regularly, through the probation officer, until December 27th, 1928. He was employed in one of the insurance companies in Hartford at a salary of $1,800 per year and had an account in a bank in that city. In July, 1928, having first secured a leave of absence from his employer for a period of four months, the accused went to Reno, Nevada, arriving there on or about July 26th, 1928, taking a room with a private family where he remained during his stay in Reno. He took part in no social, political or church activities during his stay in Reno, and had no bank account there or any property except his personal clothing and cash which he took with him. He received no mail while there and left no directions for forwarding mail from Hartford. During his stay he traveled about, sometimes crossing the State line, but always returning to his room at night upon information from his landlady that this return

was necessary in order to give the court in Nevada jurisdiction. On November 5th, 1928, the accused filed an action for a divorce and the wife in Hartford was served with a summons, but did not appear to defend it, being without funds. On December 22d, 1928, the Second Judicial Court for the County of Washoe, Nevada, entered a decree in favor of the accused for an absolute divorce from his wife on the ground of extreme cruelty and desertion. Almost at once, the accused left Reno for Hartford, arriving December 26th, 1928, resuming his employment with the insurance company and his residence with his mother, and payments to the wife were discontinued after December 27th, 1928. The foregoing facts were found by the trial court, and the conclusion reached that, in going to Reno, the accused had no intention of giving up his domicil and residence in Hartford, but that he went with the specific purpose of more readily and speedily securing a divorce from his wife, that at all times during his absence it was his intention to return to Hartford immediately upon securing a divorce, and that his residence in Reno was colorable merely. The trial court held, on the foregoing facts, that the stay of the accused in Reno conferred no jurisdiction upon the court in Nevada to grant a divorce having extraterritorial validity, and that the claimed decree was not a valid defense to a prosecution for nonsupport in this State. The accused was found guilty and judgment was entered accordingly.

The accused has brought to this court the entire evidence in the case, and asks numerous changes in the finding. He contends that the evidence does not support these findings of the court as to his purpose in going to Reno, or the conclusion that his residence in Reno was merely colorable. Upon the trial the accused testified that he went to Reno for his health

with the intention of abandoning his domicil in Connecticut, and not with the sole intention of obtaining a divorce, and that he intended to live there permanently. The trial court decided that this testimony was untrue, and in reading the transcript of evidence with care, we cannot say that this conclusion was other than a reasonable one. None of the requested changes in the finding of the subordinate facts could affect this result. The vital character of this conclusion in its bearing upon this case, is at once obvious. The extraterritorial validity of the Nevada decree, and hence its sufficiency as a defense in this action, is dependent upon the good faith of the accused in taking up his residence in that State. If that residence was colorable only, the foundation of jurisdiction for all extraterritorial purposes was gone, and so far as our own State is concerned, the marital status was not dissolved by the Nevada decree. Had the residence been actual and bona fide, that decree would have been recognized by the courts of this State as a matter of comity under the full faith and credit clause of the Constitution of the United States, since no facts which justify an exception to this rule are presented by this case. *Cristilly* v. *Warner,* 87 Conn. 461, 463, 88 Atl. 711; *Vanbuskirk* v. *Hartford Fire Ins. Co.,* 14 Conn. 583, 592.

That the accused may have gone to Reno for the purpose of availing himself of the divorce laws of that jurisdiction, while a pertinent fact bearing upon the good faith of his residence there, is not in itself conclusive, since it is the right of any citizen to so avail himself of the laws of another State by becoming a bona fide resident thereof. *Gregory* v. *Gregory,* 76 Me. 531, 539; *Colburn* v. *Colburn,* 70 Mich. 647, 649, 38 N. W. 807; *Fosdick* v. *Fosdick,* 15 R. I. 130, 23 Atl. 140. On the other hand, the residence could not be bona fide if he did not actually change his residence

from Connecticut to Nevada, and did not actually go to Nevada with the fixed intention of remaining there. *Albee* v. *Albee,* 141 Ill. 550, 563, 31 N. E. 153. Since we must accept the finding of the trial court that the residence in Nevada was colorable only, it follows that the court of that State was without jurisdiction, extra-territorially, and, so far as this State is concerned, its judgment was a mere nullity. *Haddock* v. *Haddock,* 201 U. S. 562, 610, 26 Sup. Ct. 525; *Thompson* v. *Whitman,* 85 U. S. (18 Wall.) 457, 469; *Gildersleeve* v. *Gildersleeve,* 88 Conn. 689, 693, 92 Atl. 684.

The only other defense made to the present action, was the claim that the wife deserted the accused, and certain changes in the finding are requested in support of this claim. The trial court found that the accused and his wife mutually agreed in the presence of the probation officer, that the accused would pay $12 per week for the support of the wife and child on the understanding that she was to live with her parents and he with his mother. This finding is directly supported by the testimony of the probation officer and by that of the wife, and there is no ground upon which we can set it aside. It was the right of the trial court to refuse to accept the testimony of the accused in so far as it is conflicted with this conclusion, and the additions which the accused requests, based upon his own testimony, cannot therefore be allowed.

Since both defenses failed, it is unnecessary to discuss other questions raised by the appeal, as they could not, in any event, change the result.

There is no error.

In this opinion MALTBIE, HINMAN and BANKS, Js., concurred.

WHEELER, C. J. (dissenting). It is undoubted that if the finding of the trial court stands the only legal

conclusion which can be drawn from the facts by this court is that which the majority opinion draws. The question of law, which is fairly raised upon the appeal, and which compels me to reach a different conclusion from that reached by my associates, concerns the method adopted by the trial court in permitting the State to secure these facts by a method contrary to our procedure, and one in derogation of the constitutional rights of the accused.

The information charges the accused with neglect and refusal to support his wife and child. The State offered evidence to prove the date of marriage of the accused and his wife, that they had lived during their married life in Hartford and that the accused had not furnished support for his wife and child since December 26th, 1928, and rested its case.

The accused, as the first witness in his behalf, testified to having supported his wife and child while he was living with them in Hartford and of his wife having left him three times. Counsel stipulated that the accused had not supported his wife since about December 30th, 1928, to the time of the trial, March 22d, 1929. His counsel then inquired of him, "Whether or not you obtained a divorce in another State of this Union?" He replied, in Reno, Nevada.

An exemplified copy of the divorce judgment and decree was then offered in evidence. It was in due form and contained all jurisdictional requirements of the State of Nevada. The State objected to its admission until the accused had established "that he was an actual bona fide resident of the State of Nevada."

Thereupon the court ruled, "Well, before admitting it, if you are going to claim that it was fraudulently obtained, obtained through fraud, or anything of that kind, I will permit you to examine him before I admit it."

The State then, over the objection and exception of the accused, inquired of him concerning his place of employment in October, 1927, and at present, that he had had no home of his own while living with his wife but that they had resided with his parents, he furnishing the bedroom which they occupied and they living in the rest of the house with the rest of the family, and that he arrived in Nevada July 26th, 1928, alone. The State then inquired: "Before you left you obtained a leave of absence from your employer?" Counsel for the accused objected upon the ground that the jurisdiction was determined by the Nevada decision and cannot be collaterally attacked and inquired into here. The court overruled the objection and the accused duly excepted, and the witness testified that he had talked with his employer who agreed that if he came back within four months his position would be kept open for him.

He was also inquired of by the State as to whether he had ever instructed the registrars to take his name from the Hartford voting list, and whether he had not regularly supported his wife during the time he was in Nevada under an arrangement made with the probation officer.

He was then further inquired of by the State as to his residence in Reno, the house he lived in, his places of eating, his employment or attempts to secure employment there, as to whether he there paid taxes, joined a church, owned property, or had anything there except his clothing, or had charge accounts at stores, or had subscribed to magazines, or consulted a lawyer with regard to divorce before leaving Hartford, as to his mail in Reno, his vacation in the coming summer, as to his being on the voting list in Nevada, as to his purpose in going to Nevada, and as to whether he had visited his child after returning to Hartford.

The State then inquired as to the charge of intolerable cruelty found by the Nevada court, claiming that it was on the same footing as the evidence in regard to whether the accused was a bona fide resident of Nevada. The court excluded the question upon the objection of counsel for the accused and the State duly excepted. Counsel for the State claimed from the facts elicited from this preliminary examination that the residence of the accused in Nevada was colorable.

The court then ruled that it would admit the judgment and decree of the Nevada court and later pass upon the force and effect it would give it. The decree purported to be upon the grounds of intolerable cruelty and desertion. Counsel for the accused renewed his objection claiming that it was for the State to establish that the decree was colorable and not for the accused to disprove that claim for the reason that a foreign court decree does import verity.

Counsel for the accused then said he had no additional evidence to offer. The court then examined the accused as to how he and his wife came to live apart and if he then wished his wife to come back.

Later the court inquired of the accused as to whether he went to Reno to get a divorce, as to when it occurred to him there to get one, as to when he consulted a lawyer and brought his action, as to whether it was about that time he discovered his wife had been intolerably cruel to him and had deserted him, as to whether he recovered his health after he obtained his decree, and as to the places he had been in, within and outside Nevada during his residence in Reno.

The facts tending to show that the residence of the accused in Reno was a colorable one were elicited almost entirely by the State or by the court in the preliminary examination of the accused which was permitted by the court prior to its decision relative to

admitting in evidence the decree. Practically this is true as to paragraphs ten, eleven, twelve, fifteen, sixteen, seventeen, eighteen, nineteen and twenty-five of the finding.

No objection was offered by the State to the offer in evidence of the decree because it was defective in authentication in any particular, nor did the trial court question it in these particulars, nor do counsel for the State in this court suggest its deficiency in any of these particulars.

Upon its offer it was admissible and to refuse its admission was to deny full faith and credit to the decree of a State of the Union in violation of the first section of Article IV of the Constitution of the United States. *Bank of North America* v. *Wheeler,* 28 Conn. 433, 439; *Hampton* v. *M'Connel,* 16 U. S. (3 Wheat.) 234.

To require an accused to give testimony tending to prove that this decree was a colorable one was to make him incriminate himself which was a violation of § 9 of Article First of the Constitution of Connecticut.

The burden of proving that this decree was a colorable one was upon the State and it could not satisfy this burden by testimony from the accused obtained from him by compulsion and against the objection and protest of his counsel. *Gildersleeve* v. *Gildersleeve,* 88 Conn. 689, 92 Atl. 684; 19 Corpus Juris, 175, and cases cited in note 67.

Other facts elicited upon this point by the State or the court were obtained in large part from the accused and after he had rested his case and were not responsive to the direct examination of the accused, and were open to the same grave constitutional objections as was the entire preliminary examination.

Upon the facts thus obtained from the accused the court reached the conclusion "that this accused did not go to Reno with the bona fide intention of making that his domicil; that his so-called residence or domicil there was merely a colorable one; that when he left Hartford to go to Reno he had no intention of making Reno his domicil, nor did he, when he was in Reno, intend to establish his domicil, but at all times he intended, as soon as his decree was granted, if it was, to return to Hartford. Therefore, this court, under the rule laid down in the *Gildersleeve* case, is not required to recognize the validity of the Reno divorce."

I am in full accord with the doctrine of our court upon the invalidity of a foreign divorce which is merely colorable through the failure of a plaintiff to acquire a bona fide residence in the jurisdiction granting the divorce.

There is, however, something involved in this case of far higher consideration than the punishment of the accused for his neglect and refusal to support his wife and child, and that is the maintenance of the conduct of our trials in accordance with our rules of procedure which are based upon fairness and the preservation of constitutional rights which are essential to the Union of our States and to the individual rights of our citizens.