VIOLA E. Cox, complainant-respondent,

*v.*

WILBUR HARRY COX, defendant-appellant.

[Submitted May term, 1945.   Decided September 27th, 1945.]

*Messrs. Herrigel, Lindabury & Herrigel (Mr. Fred Herrigel, Jr.,* of counsel; *Mr. Irving Y. Gidley,* on the brief), for the complainant-respondent.

*Mr. Eugene F. Hoffman (Mr. Jules E. Tepper,* of counsel), for the defendant-appellant.

The opinion of the court was delivered by

BROGAN, CHIEF-JUSTICE.

In this matrimonial case the defendant-husband appeals from a decree of the Court of Chancery which struck down a foreign divorce decree obtained by him as "null. void and of no force or effect in this state;" the appeal also challenges the decree for support and maintenance of a daughter of the marriage.

The complainant-wife, Viola E. Cox, filed bill for separate maintenance in our Court of Chancery on September 12th, 1943. The husband, Wilbur Harry Cox, having left this state on July 20th, 1943, arrived at Reno, Nevada, on July 23d, 1943. After the expiration of about six weeks, *i. e.,* on September 7th, 1943, he filed a complaint in Nevada, praying absolute divorce which was granted him on October 15th, 1943.

On December 8th, 1943, the wife filed a supplement to her bill, praying that the husband's Nevada decree be adjudged to be of no force and effect in this state. Meanwhile the husband had married one Mildred Hamilton in the State of New York. In answer to the wife's bill for maintenance the husband set up the Nevada decree. In answer to the wife's supplement to her bill, Mr. Cox asserts that prior to his divorce action in Nevada he had been a *"bona fide* resident" of that state; that the complainant had notice by publication of his pending action and that his decree of divorce was in all particulars valid and effectual. Whether, in the facts and circumstances attending the matter, the foreign decree is valid is the principal question in the case.

These are the facts: Wilbur Harry Cox has been in the employ of the Board of Education of the Borough of Hillside

in Union County for twenty-three years and at the time this cause was heard was a high school principal in that district. The parties were married in 1925 and lived together as husband and wife until July, 1943. About 1935 he became very ill and had surgical attention. Thereafter he claims his wife's attitude towards him changed. On her part this is denied. It is clear, however, that their home life was not peaceful. The details are not important here. . It is, however, not open to dispute that the husband, in 1943, had lost all regard for his wife and that he had developed a marked infatuation for another woman whom he married after his Nevada decree. The exhibits in the case remove all doubt as to the situation that really existed between these people. In the school vacation period of 1943, Mr. Cox made advance application to the supervising principal of Hillside for an additional three or four weeks of vacation. The request was granted. On September 18th, 1943, Mr. Cox again wrote to the supervising principal saying that he had had poor health during the summer and requested a leave of absence. This letter was mailed from East Roselle, New Jersey. Mr. Cox stated in the letter that he "returned" to Hillside to be assured "that school was opening successfully." Thus it appears that he had been in Reno, Nevada, since July 23d, 1943; that his complaint for divorce in that state was filed on September 7th; that on September 12th he returned to New Jersey and on the following day resumed his duties at the high school, after which he made the request for sick leave mentioned above. Under the rules of the Board of Education Mr. Cox was entitled to a certain number of days off each year as "sick leaves;" these "leaves" are cumulative; and because of that circumstance it appears that he had a legal right to absent himself from school work until November 9th, 1943 (a matter of about forty days) upon supplying to the Board a doctor's certificate to support the absence; but that for any leave beyond that he was required to make an appropriate application to the Board of Education. It appears then that Mr. Cox carried on his duties at the high school on September 14th and 15th; that he obtained his physician's certificate of illness on September 20th or there-

abouts; and that he returned to the State of Nevada on September 29th. The hearing on his petition for divorce at Reno, Nevada, took place on October 15th, when he obtained a favorable, final decree. Ten or eleven days thereafter, according to his own testimony, he left the State of Nevada and on November 8th resumed his duties as principal of the high school.

In corroboration or support of the legitimacy of his alleged change of domicile to Nevada and his intention to remain there, Mr. Cox testified that while there he endeavored to find employment as a teacher in the school system of that state and that he sought employment in the International Correspondence School. As a matter of fact, there was no vacancy in any school in the particular district in which he made inquiry. He called on the Deputy State Superintendent of Schools but once, on October 25th, 1943, at which time he stated that he was on "sick leave" from his post in Hillside High School. The learned advisory master found that the domicile which Mr. Cox claimed to have established in Nevada was a mere pretense and therefore that his decree obtained in such fashion possessed no validity in this state.

This determination is attacked by the appellant on two grounds, first, as an unjustifiable fact conclusion and, second, as a denial of the full faith and credit to the judgment of another state, guaranteed by the federal constitution, article 4, section I.

In support of the first point—that Mr. Cox established a legal domicile in Nevada—the argument is that his wife had persistently "nagged" and "berated" him and on one occasion had threatened him. These accusations were denied, but even if they were not they would have but little bearing on whether the husband went to Nevada with the intention of staying there permanently and with no intention whatever of returning to this state. For the intention to effect a change in domicile must, of course, be unqualified and not subject to conditions of any kind. *Sprague* v. *Sprague, 131 N. J. Eq. 104.*

It is further pointed out as evidence of his intention to establish a domicile in Nevada that the defendant resigned his post in the Masonic Lodge, resigned as chairman on the com-

mittee of the American Legion, resigned as president in the Union County Teachers' Association, and that he told his friends that he was going to Nevada, never to return to New Jersey. The testimony, however, concerning his resignation from some of these offices suggests that he relinquished them for reasons of health. Whatever he said at various times about not returning to New Jersey finds no real corroboration in the testimony of any witness. It is not persuasive corroboration to make a self-serving declaration to another only to have that other repeat it at a time when it might be helpful. The course of conduct and the particular acts of Mr. Cox make better evidence of his intention—which is always an issue of fact—in the matter of his domicile than what he told others his intention was. The woman with whom he boarded in the Reno district testified that he lived in her home from July 24th to September 9th, 1943, when he left. On his return to Nevada, on September 29th, apparently he lived elsewhere.

The application made to the school official of the district of Reno for a teaching position, we regard as an inquiry, more or less formal, as to the prospects for a school teacher in that district of Nevada. Cox also obtained a license to drive an automobile in Nevada. This was necessary, according to his testimony, in his effort to find work. He called at the office of two railroad companies, as he says, "to see where I could make application for a position" with the railroad. It appears that there was a position available with a correspondence school. The fact is, however, that he did not accept such position or any other, if any there was, but returned home upon receipt of a letter from his sister who was "concerned about the sequestration orders" which had been obtained by Mrs. Cox in aid of her suit for separate maintenance. As against these and other circumstances presented that he left New Jersey with the permanent intention of living in Nevada, the inference from all the facts is well nigh irresistible that he left this state and went to Nevada for the sole purpose of getting a divorce. One of his letters, written in August, 1943, bespeaks his complete infatuation for the woman he later married and excludes doubt on that score. Nonetheless

Mr. Cox insisted that he went to Nevada not for the purpose of getting a divorce but to establish a domicile. He explained that he selected Reno as the place for the benefit of the climate; that within two weeks or less after his arrival he made up his mind to get a divorce; that he determined to get out of what he called "the situation," *i. e.,* his marriage; but he finally conceded that his determination to rid himself of the "situation" was just as strong when he left New Jersey as it was two weeks after he arrived in Reno. With regard to his intention in this matter we think the proofs indicate that he had not abandoned the intention to return to his position in New Jersey. In his first letter to the school authorities, asking for additional vacation, Mr. Cox assured the Board of his "untiring service" for the year 1943 and 1944. The obvious inference here is that he intended to return for the ensuing school year. As a matter of fact, he did so. Mr. Cox admitted that he had discussed the matter of divorce with his wife as late as July 17th, 1943, and that he left three days afterwards for the State of Nevada; that he interviewed an attorney within ten days or two weeks after his arrival and that shortly after the six weeks residence requirement of the State of Nevada he filed his complaint to absolute divorce. On September 12th, 1943, after his suit was started and before it came on for hearing, he returned to his duties as principal of the Hillside High School. He served for some days, got an extended sick leave and returned to Nevada on September 29th. Contrasting the defendant's statements about intending to establish a legal domicile in Nevada with his actions, we conclude that the finding of the advisory master on this element of the case was correct. In our appraisal of the facts we ascribe no weight to his own declarations of intention and very little to his resignation from office in the several societies for the reason that his actions were not consistent with his statement of intention. There is further proof that he had no outright present intention of resigning his post as a principal of the high school though the thought was present that he might be compelled to do so. In a letter to Miss Hamilton he tells her in definite, unmistakable terms that he relied on several persons of influence

to take sides with him, and he counted on his lodge connections. His thought that he might lose his position is to be inferred from his expression that "the people aren't going to stand for 'shenanigans' * * *." The letter continued: "So I'll be 'cagy' and play my cards as well as possible." Now if he had gone to Nevada with the intention of not returning to New Jersey there would be no need for any concern about the help and support of friends or lodges to save his position. Assuming for the sake of argument that he did not intend to return to New Jersey, there is further proof in the letter from his words, "If I can get my freedom in Washington I'll go there, or Mexico, or Argentina"—of the fact that his residence in Nevada was tentative and conditioned on his obtaining what he sought—a decree of divorce. The appellant's argument that he intended to go to Nevada and remain there permanently, taking advantage of his right to apply to the Hillside school authorities for a disability pension, would seem to be an afterthought. In the letters that passed between him and the school authorities he made no mention of any such intention. On the contrary, his letters are replete with inference that he intended to return and resume his duties after his period of sick leave and the extension thereof had expired. In sum, we find that the domicile alleged by Mr. Cox to have been established by him in the State of Nevada was entirely spurious and that the finding of the advisory master to that effect was justified and, further, that his sojourn in Nevada, during which he petitioned for divorce, flies in the face of the declared public policy of this state as stated in *R. S. 2:50–35*, the pertinent part of which reads as follows: "That if any inhabitant of this state shall go into another state or country, in order to obtain a decree of divorce for a cause which occurred while the parties resided in this state, or for a cause which is not a ground for divorce under the laws of this state, a decree so obtained shall be of no force and effect in this state."

This brings us to a consideration of the second question: whether full faith and credit, as required by the Constitution of the United States, was denied the Nevada decree by the learned advisory master. The decree was entitled to full

faith and credit only if the court that pronounced it had jurisdiction of the subject-matter and the person. In all instances where a foreign judgment is relied upon the jurisdiction of the court rendering the judgment may be made the subject of inquiry. It is only when the jurisdiction of the court in another state is not impeached, either as to the subject-matter or the person, that the record of the judgment is entitled to full faith and credit. *1 Kent (12th ed.) *262 (note b)*. Cf. *Thompson* v. *Thompson, 89 N. J. Eq. 70; Sprague* v. *Sprague, supra; Mascola* v. *Mascola, 134 N. J. Eq. 48; Hollander* v. *Hollander, 137 N. J. Eq. 70;* these are but a few of our adjudications that have so held. *Williams* v. *North Carolina, 65 Sup. Ct. Rep. 1092.*

If, therefore, domicile of at least one of the parties is indispensably necessary to confer jurisdiction on the court to grant a divorce—and such is the rule—see *Bell* v. *Bell, 181 U. S. 175; Andrews* v. *Andrews, 188 U. S. 14*—then the Nevada court was without jurisdiction to award the husband a valid decree. It took jurisdiction because it was deceived into doing so by the husband's fraudulent representations concerning domicile in that state. Marriage being a status, *i. e.,* a continuing relationship between the parties to it, the state of the domicile of the parties to that status is the state with jurisdiction over it. The State of Nevada did not acquire jurisdiction in this instance because the "plaintiff [petitioner] Cox was not domiciled in that state when his action was instituted."

It is further argued that a provision of the decree fixing $15 a week for the support and maintenance of Virginia Cox, a daughter, should be set aside. At the time of the hearing, April, 1944, the daughter was seventeen years of age. She was a student at the New Jersey State Teachers College in Newark. The amount allotted for the support and maintenance of the daughter does not seem to us unreasonable. As she grows older it is to be expected that she will support herself. In any event, if the amount fixed becomes too burdensome for the appellant because of reduced earning he can always apply to the Court of Chancery for relief. In the state of the proof before us he is not entitled to relief now.

The appellant has annexed to his brief as an exhibit an affidavit executed on December 4th, 1944, stating that he has recently retired on pension provided by the Teachers' Pension Annuity Fund of New Jersey and that his income is considerably less than it had been. The decree under review was made on October 6th, 1944, and the affidavit, improperly laid before us as an *addendum* to the brief, should not be considered. It was not before the court below and it should not be added to the record here.

The decree is affirmed in all its parts.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, COLIE, OLIPHANT, WELLS, RAFFERTY, DILL, FREUND, McGEEHAN, JJ. 14.

*For reversal*—None.