LILLIAN P. RICE *v.* HERMOINE P. RICE ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued February 3—decided March 10, 1948

*Daniel D. Morgan* and *Thomas F. Seymour,* for the appellants (defendants).

*Ralph H. Clark,* with whom was *Samuel A. Persky,* for the appellee (plaintiff).

BROWN, J.  In this action the plaintiff seeks a declaratory judgment that a decree of divorce granted in Nevada on June 13, 1944, to her husband, the late Herbert N. Rice, was colorable and did not dissolve their marriage.  The defendants are the administrators of Rice's estate and Hermoine P. Rice, to whom Rice was married in Nevada on July 3, 1944, and to whom we shall hereinafter refer as the defendant.  The Superior Court rendered judgment for the plaintiff and the defendants have appealed.  The fundamental question presented for determination is whether Herbert N. Rice had acquired a bona fide domicil in the state of Nevada at the time the divorce decree was entered so that it was a valid decree, entitled to full faith and credit under article IV, § 1, of the constitution of the United States.

The case was fully tried before *Pallotti, J.,* who died without rendering a decision.  Pursuant to stipulation of the parties, the court ordered a transcript of the testimony and proceedings of the case as tried, together with the depositions, exhibits admitted in evidence and briefs filed by counsel, referred to a state referee, to be acted upon by him as though originally referred pursuant to §§ 167–178 of the Practice Book.  The report of the referee, as amended pursuant to a further stipulation, states that he considered all of the exhibits and evidence "subject to such rulings thereon concerning admissibility as were made by the late Judge Pallotti during the trial . . . and made no rulings thereon himself" and that these rulings "may be considered and have the same

effect as though they had been made by said State Referee." The court overruled the defendants' remonstrance, accepted the report as amended and rendered judgment for the plaintiff.

The material subordinate facts in the report as found by the referee may be thus summarized: The plaintiff and Herbert N. Rice, the intestate, were married July 7, 1921. They lived in this state, first in New Haven and Hamden, and then from 1928 to September, 1942, in Woodbridge. In June, 1942, Rice closed up the incorporated automobile agency which, as principal stockholder, he had conducted in New Haven; most of the equipment was sold, some of it leased, and the rest stored in the Rice residence in Woodbridge. In September, 1942, he obtained a job in Springfield, Massachusetts, and lived there in a rented room until March, 1944. Rice told the plaintiff and others that this was a temporary job and that when the war was over he intended to return to Woodbridge and reopen his automobile business. The plaintiff remained in Woodbridge, and Rice retained his home there during this period.

About the time that Rice went to Springfield he and the defendant, who lived in New Haven, discussed the question of their marriage after he should have secured a divorce from the plaintiff. In February, 1944, he told the defendant that he was going to Reno to get a divorce and that if he got it he was going to ask her to marry him. He further stated that he had been advised that if he did not make his permanent home in Nevada the divorce would be questioned, that after their marriage they must make their permanent home in Nevada, and that he was never coming back to Connecticut. In March, 1944, Rice went to Reno, Nevada, for the sole purpose of obtaining a divorce from the plaintiff and arrived

there on March 23. He started his divorce action
May 5; service was made on the plaintiff by leaving
a copy of the complaint in her hands in Woodbridge
on May 12, 1944; no appearance was entered by her
and the Nevada court entered a decree granting him
a divorce from her on June 13, 1944. Rice tele-
graphed the defendant that the decree had been
granted and on July 3 she arrived in Reno and they
were married.

When Rice reached Reno he rented a room by the
week in a rooming house and obtained a job at war
work. Shortly before the divorce was granted he
told the attorney representing him in the action that
he had applied to the army employment agency for
a job and asked whether it would be all right for him
to take a job at Herlong, California. He was told
that it would. On the day before his marriage to the
defendant he resigned his job in Reno, and upon their
return from their wedding trip they went to Herlong,
where he had obtained a war job and she a position
as nurse at the army post. They lived in Herlong
from July 15, 1944, until Rice died on December 23,
1944. In September, 1944, the defendant sent for her
household furniture, which she had left in storage
in New Haven, and, when received, it was used to
furnish the bungalow in which they lived in Herlong.
Rice continued to pay rent for his room in Reno at a
reduced price per week, although it was occupied
part of the time by others. He kept a trunk, some
clothing and personal effects in a closet there, and a
short time after they went to Herlong the defendant
brought a change of clothing which was left in the
closet. They came to Reno occasionally for the
weekend and then occupied the room. Rice contin-
ued to pay rent for the room in Reno because he did
not know whether his job in Herlong would be per-

manent or whether he and the defendant would like it there, for if they did not they intended to return to Reno and make the room their home until they could find a place where they could get a home and start a guest house; and he asked his attorney to be on the lookout for a good location for him in Reno.

Rice told his Reno attorney that he did not intend to return to Connecticut but intended to remain in Reno "indefinitely." And he so testified in his divorce action. He told other persons that he intended to make it his permanent home. On July 14, 1944, Rice and the defendant opened a joint account in a bank in Reno. In October, 1944, they applied to be made voters in Nevada but were told that such applications could not be granted until they had resided in the state for one year. While the defendants do not claim by their remonstrance that any of these facts was improperly found, they do complain of the referee's failure to find certain further facts. This contention is unavailing, however, because each such fact is immaterial, is expressly or impliedly included in those which have been found, or is not admitted or undisputed within the meaning of § 353 (a) of the Practice Book. *Morse* v. *Morse,* 128 Conn. 138, 139, 20 A. 2d 730. In so deciding this claim of the defendants, we go beyond what they are entitled to upon their brief. By his report, the referee properly found the ultimate fact as to Rice's residence in Reno, and also the subordinate facts. Practice Book § 169; *Fox* v. *South Norwalk,* 85 Conn. 237, 238, 82 A. 642. While the defendants, as was their right, sought by their remonstrance to have added, as undisputed, facts claimed to have been omitted, they did not pursue those grounds of remonstrance in their brief but appealed generally to the

evidence to upset the ultimate fact. This they had no right to do.

The only further attack on the finding relates to this final paragraph of the referee's report: "Rice never established a home in Reno. He intended to do so in the future if he did not like it at Herlong but did not have an unqualified intention to make a home there at present, and Reno was not his bona fide domicil." The words quoted constitute a finding of ultimate fact, a conclusion drawn from the subordinate facts and inferences therefrom. In order to be sustained it must have been logically drawn from those facts, without violation of the plain rules of reason. *Palumbo* v. *Fuller,* 99 Conn. 353, 355, 122 A. 63; Conn. App. Proc. § 80. The question for solution is whether under the applicable principles of law the referee was warranted in making this finding and whether the court was justified in rendering its judgment thereon.

Domicil on the part of Rice was a necessary condition precedent to the jurisdiction of the Nevada court. *Gildersleeve* v. *Gildersleeve,* 88 Conn. 689, 692, 92 A. 684. This jurisdictional fact, which essentially involves the good faith of Rice in taking up his residence in Reno, is a proper subject for re-examination by the courts of this state. *Gildersleeve* v. *Gildersleeve,* supra, 693; *State* v. *Cooke,* 110 Conn. 348, 351, 148 A. 385; *Hooker* v. *Hooker,* 130 Conn. 41, 49, 32 A. 2d 68; *Williams* v. *North Carolina,* 325 U. S. 226, 234, 65 S. Ct. 1092, 89 L. Ed. 1577. The requisites of domicil are actual residence coupled with the animus manendi. Minor, Conflict of Laws, p. 199. "To constitute domicil, the residence at the place chosen for the domicil must be actual, and to the fact of residence there must be added the intention of remaining permanently; and that place is the

domicil of the person in which he has voluntarily fixed his habitation, not for a mere temporary or special purpose, but with the present intention of making it his home, unless or until something which is uncertain or unexpected shall happen to induce him to adopt some other permanent home." *Mills* v. *Mills,* 119 Conn. 612, 617, 179 A. 5. Since Rice's domicil was in Connecticut prior to his departure for Reno, our further statement in the above case concerning change of domicil is also relevant here: "When the parties left this State with the intention of never returning, their domicil in Connecticut was not thereby changed. The former domicil persists until a new one is acquired. *McDonald* v. *Hartford Trust Co.,* 104 Conn. 169, 177, 132 Atl. 902; *Shaw* v. *Shaw,* 98 Mass. 158, 160." Therefore "proof of the acquisition of a new domicil of choice is not complete without evidence of an abandonment of the old." *Morgan* v. *Morgan,* 103 Conn. 189, 196, 130 A. 254. As we stated in the *McDonald* case, supra, one's intention in departing from his domicil not to return to it constitutes no abandonment at that time; "the law does not permit one to abandon, nor recognize an abandonment of, a domicil until another has been established"; and, to have acquired a new domicil, "two things were necessary, he must have established a residence there, and while so residing he must have had the intention of making it his home." See Restatement, Conflict of Laws, § 18. In the words of the New Jersey court, residence with the "animus non revertendi," but without the "animus manendi," cannot suffice to effect a change of domicil. *Sprague* v. *Sprague,* 131 N. J. Eq. 104, 107, 23 A. 2d 810. As we pointed out in *Mills* v. *Mills,* supra, at page 618, that this intention must be unqualified and not conditional upon the happening of

a future event "is well settled," citing *Ross* v. *Ross,* 103 Mass. 575, 576; *Denver* v. *Sherret,* 88 F. 226, 227, 31 C. C. A. 499; and we there further said that the intention "must be an intention to make a home at the moment, not to make a home in the future," referring to the Restatement of the Conflict of Laws, § 20. Also, this intention must be "to make a home in fact, and not an intention to acquire a domicil." Restatement, op. cit., § 19.

The burden was upon the plaintiff to prove that Rice did not have a domicil in Reno and that therefore the Nevada court had no jurisdiction. *Williams* v. *North Carolina,* 325 U. S. 226, 234, 65 S. Ct. 1092, 89 L. Ed. 1577. Since before going there he was domiciled in Connecticut, the law as to change of domicil above recited makes clear that the defendants' attack upon the quoted finding of the referee cannot succeed unless the subordinate facts are sufficient to establish as a matter of law that Rice had acquired a new domicil in Nevada. Whether the referee was warranted in concluding that during Rice's stay in Reno he did not have the requisite bona fide intention to make it his home and therefore acquired no domicil in Nevada depends upon whether this is a reasonable inference from the subordinate facts found. See *Williams* v. *North Carolina,* supra, 236; *Esenwein* v. *Pennsylvania,* 325 U. S. 279, 281, 65 S. Ct. 1118, 89 L. Ed. 1610; *Donovan* v. *Connecticut Co.,* 86 Conn. 82, 87, 84 A. 288. No detailed discussion is required to demonstrate that these facts, in connection with the proper inferences therefrom, afford a sufficient basis for this conclusion. Very briefly, they indicate that Rice, after closing up his automobile business, in which he had long been engaged in New Haven, with the intention of resuming when business conditions warranted, decided, in con-

sequence of his infatuation with the defendant, to attempt a Nevada divorce that he might marry her; in March, 1944, he went to Reno for the sole purpose of getting a divorce from the plaintiff and obtained a decree as soon after his arrival as the Nevada law allowed; in response to his telegram the defendant came to Reno and they were married; during the period necessary to satisfy the residence requirement of the Nevada statute, Rice lived in a rented room and worked at a war job in Reno, but even before the decree was granted he applied for a job at Herlong, California; after their marriage he and the defendant went to Herlong, where they both obtained employment and lived in a rented bungalow equipped with furniture of the defendant from July 15 until December 23, 1944, when Rice died; during this period Rice had not decided whether to make his home in Herlong or to return to Reno.

Other facts found, it is true, taken at face value and by themselves, suggest a conclusion contrary to that reached by the referee. Principal among them are Rice's statements indicative of an intention to make Nevada his permanent home and never to return to Connecticut and his continued renting and limited use of the room in Reno after moving to Herlong. As to the former, it is to be noted that the finding is not what Rice's intention was but what he said it was. Such statements, under the circumstances, might have been regarded by the referee as of questionable evidential value. "Where, as here, it becomes highly advantageous to the claimant temporarily to feign an intention to become a resident for only a brief time, in order to accomplish other ends, his claim of intention will be scrutinized and weighed like any other evidence in the light of his conduct and all the circumstances surrounding it."

*Messenger* v. *Messenger,* 188 Iowa 367, 373, 176 N. W. 260. "It is not persuasive corroboration to make a self-serving declaration to another only to have that other repeat it at a time when it might be helpful." *Cox* v. *Cox,* 137 N. J. Eq. 241, 245, 44 A. 2d 92. What his intention was in fact, was for the referee's determination upon all of the facts found. The application of this principle is particularly important here, where Rice's sole purpose in going to Reno was to obtain a divorce. While such a motive is not conclusive, it is a pertinent fact bearing upon the good faith of his residence in Nevada. *Gildersleeve* v. *Gildersleeve,* 88 Conn. 689, 694, 92 A. 684; *State* v. *Cooke,* 110 Conn. 348, 351, 148 A. 385; 2 Nelson, Divorce & Annulment (2d Ed.) § 21.17. In so far as the continued renting and limited use of the room in Reno is concerned, any significance which this conduct might otherwise have is negatived by the referee's express finding that the reason for Rice's retention of it was because he did not know whether his job in Herlong would prove permanent or whether he and the defendant would like it there, and that if they did not they intended to return to Reno.

The defendants claim that evidence of Rice's relations with the plaintiff down to the time of his departure for Reno was improperly admitted. By their answer they denied that during his employment in Springfield he continued to maintain his domicil in Connecticut, as alleged in the complaint. Evidence that there were no acts, conduct or statements during that period which indicated an intent to abandon that domicil was properly admitted. The record does not bear out the defendants' claim in their brief that the evidence was admitted for the purpose of showing that Rice's matrimonial domicil was in Connecticut,

under the rule in *Haddock* v. *Haddock*, 201 U. S. 562, 26 S. Ct. 526, 50 L. Ed. 867, a case partly overruled in *Williams* v. *North Carolina*, 317 U. S. 287, 63 S. Ct. 207, 87 L. Ed. 279; nor was any such question of matrimonial domicil as was considered in the *Williams* case involved in the situation before us. Finally, the defendants' claim that the report of the referee indicates that he erroneously interpreted Rice's testimony in the divorce action that he intended to remain in Reno "indefinitely" as meaning less than "permanently" is without merit. In the light of the referee's evident disbelief of the truth of Rice's statements, made to others, of his intent to reside "permanently" in Reno, as shown by the referee's finding, it cannot reasonably be maintained that, though the referee did construe the word as suggested, the defendants could have been prejudiced thereby.

There is no error.

In this opinion the other judges concurred.