MARY P. MELILLO *v.* DOMENIC J. MELILLO

SUPERIOR COURT　　　NEW HAVEN COUNTY　　　FILE NO. J 4324

Memorandum filed October 30, 1953.

*Istas & Chisaski,* of New Haven, for the Plaintiff.

*Nathan G. Sachs,* of New Haven, for the Defendant.

TROLAND, J.  The plaintiff and defendant were married June 3, 1941, and lived together in New Haven until the spring of 1950.  They have two small children.  Marital difficulties began about 1943.  These difficulties increased over the years because of the defendant's romantic interest in another woman, and ended finally in the separation of the couple.  The defendant husband continued to live in New Haven, however, and visited his children from time to time and contributed to their support.

In June, 1951, the defendant left New Haven secretly.  He arranged beforehand with the young woman in whom he was interested to have money orders purchased by her in New Haven and mailed in New Haven to his wife, to be used towards support of the children.  The defendant traveled to Florida, hired a hotel room and a few days later consulted an attorney about a divorce.  The plaintiff did not know of the whereabouts of the defendant until, early in October, 1951, she received through the mail copy of a bill of complaint for divorce, filed by her husband in the Circuit Court of the eleventh judicial circuit, in and for Dade County, Florida.  The plaintiff entered no appearance in the Florida case.  Defendant on December 10, 1951, was granted a divorce from the plaintiff on the ground of extreme cruelty.

In November, 1951, the defendant sent a sum of money, approximately $300, to his young woman friend in New Haven, and on December 14 she arrived in Miami.  They were married December 24, 1951, in Miami.  Thereafter the couple lived in one room of a small bungalow occupied by another family, and then moved to another room, where they

paid rent of $15 a week. The defendant had work as a bellboy in a hotel but in a few weeks changed to work as chauffeur for a New York City resident. As spring approached, the New Yorker moved north to Hollywood, Florida, and defendant and his Florida wife moved into a trailer camp for a short while there. In April defendant drove his employer to New York City. A week later, after an unsuccessful effort to secure a job in New York, the defendant came "home," as he said, to New Haven, where he has been living with his new "wife."

The parties are in substantial agreement as to the law applicable to this case. Under our system of law, judicial power to grant a divorce—jurisdiction, strictly speaking—is founded on domicil. *Williams* v. *North Carolina,* 325 U.S. 226, 229. Domicil in Florida on the part of Domenic Melillo was a necessary condition precedent to the jurisdiction of the Florida court. *Gildersleeve* v. *Gildersleeve,* 88 Conn. 689, 692; *Rice* v. *Rice,* 134 Conn. 440, 445. This jurisdictional fact, which essentially involves the good faith of Domenic Melillo in taking up his residence in Florida, is a proper subject for re-examination by the courts of this state. As stated in *Williams* v. *North Carolina,* supra, 232, "the decree of divorce is a conclusive adjudication of everything except the jurisdictional facts upon which it is founded, and domicil is a jurisdictional fact."

We are therefore concerned with the meaning of what have been called "two of the most uncertain word symbols in all the judicial lexicon, jurisdiction and domicil." This court is bound by the definition of domicil approved by the Supreme Court of Errors of Connecticut in *Rice* v. *Rice,* 134 Conn. 440, 445, where it says: " 'To constitute domicil, the residence at the place chosen for the domicil must be actual, and to the fact of residence there must be added the intention of remaining permanently; and

that place is the domicil of the person in which he has voluntarily fixed his habitation, not for a mere temporary or special purpose, but with the present intention of making it his home, unless or until something which is uncertain or unexpected shall happen to induce him to adopt some other permanent home.' "

The burden is on the plaintiff to prove that Domenic Melillo did not have a domicil in Miami and that therefore the Florida court had no jurisdiction. On all the evidence in the case the court is of the opinion that this burden has been met. The divorce granted in Florida on December 10, 1951, to Domenic Melillo is colorable and did not dissolve his marriage to Mary Melillo. In so holding, the court is mindful of the confusion resulting from the application of the rules of law above stated. It may be difficult for Domenic Melillo and his new "wife" to realize that, notwithstanding the apparently protective mantle of the Florida divorce decree and the Florida marriage certificate, their living together for the past many months has been adulterous.

The issues are found for the plaintiff. Judgment may enter granting her a divorce from the defendant on the ground of adultery. The custody of the minor children of the parties is awarded to the plaintiff, with reasonable rights of visitation to the defendant. The defendant is directed to pay as alimony to the plaintiff $1 a week and defendant is directed to pay to the plaintiff $12.50 a week for the support of each of the minor children.