### JACQUELINE O. JUMA *v.* TOM M. AOMO
### (AC 33660)

Bear, Sheldon and Harper, Js.

52

Argued March 19—officially released May 28, 2013

*Tom M. Aomo*, pro se, the appellant (defendant).

*Enelsa Diaz*, for the appellee (plaintiff).

*Opinion*

SHELDON, J. In this appeal, the defendant, Tom M. Aomo, claims that the trial court lacked subject matter jurisdiction over the action for the dissolution of his marriage to the plaintiff, Jacqueline O. Juma, because he had initiated an action for, and ultimately obtained, a divorce from the plaintiff in Kenya. The defendant also challenges certain of the trial court's orders related to the parties' finances and children. We affirm the judgment of the trial court.

Since the plaintiff commenced this action on October 1, 2009, the defendant has repeatedly attempted to challenge the court's jurisdiction on the ground that he had already commenced an action for dissolution in Kenya and that the parties' marriage could only be dissolved by the Kenyan courts. On June 16, 2010, after a hearing, the court, *Dolan J.*, rejected the defendant's jurisdictional claims and denied a motion to dismiss filed by him. On September 15, 2010, the defendant filed another motion to dismiss, again challenging the court's jurisdiction over the parties' dissolution action. On November 22, 2010, after another hearing, the court, *Prestley, J.*, denied the defendant's motion to dismiss. On December 30, 2010, the defendant filed yet another motion to dismiss, again alleging the trial court's lack of jurisdiction. In conjunction with the dissolution trial, the court,

*Olear, J.,* held an evidentiary hearing regarding the jurisdictional issues raised by the defendant. On July 1, 2011, the court issued a memorandum of decision in which it denied the defendant's motion to dismiss, dissolved the parties' marriage and entered orders regarding the parties' finances and the care and custody of their children. This appeal followed.

I

We begin with the defendant's claim that the trial court lacked subject matter jurisdiction over the parties' dissolution action. In examining this issue, the trial court made the following relevant factual findings. "The defendant moved to the United States in November, 1997. He obtained a degree from the University of Michigan. He obtained permanent residency. He filed the necessary papers for the plaintiff and [the parties' eldest child] to move to the United States in 2001. Visas were issued in November, 2006. In January, 2007, the plaintiff and the eldest child . . . moved to the United States. The plaintiff has been a legal permanent resident of the United States since January 20, 2007. The second child of the [parties] . . . was born in the United States on October 27, 2007. The defendant became a naturalized United States citizen in 2008 and in so doing relinquished his Kenyan citizenship. In August, 2010, after this proceeding was instituted, Kenya approved dual citizenship and the defendant obtained the same.

"At the time the defendant initiated divorce proceedings against the plaintiff in Kenya in August 4, 2009, he was a United States citizen (and not a Kenyan citizen) and he, the plaintiff and their two children were residing in Connecticut.

"The Kenya divorce petition provides [that the parties] are both domiciled in the United States. The defendant testified [that] the domicile representation was made in error and it was corrected through the process.

The plaintiff testified, credibly, that it was the intention of both of the parties to make the United States their home. The plaintiff acknowledged being domiciled in Connecticut.

"In the summer of 2009, the marriage of the parties clearly was breaking down. There is credible evidence of the defendant engaging in extramarital affairs and of domestic violence in the marital home and further the plaintiff was, in the words of the defendant, 'develop[ing] more confrontational ways in interacting with the [d]efendant which surely disturbed the [d]efendant.' . . . The defendant elected to obtain a divorce in Kenya pursuant to which he would benefit financially.

"The defendant had the divorce petition prepared while he was in Brazil on a work assignment and the plaintiff and the children were on a vacation in Kenya. The credible evidence is the plaintiff went to Kenya at the behest of the defendant as he wanted to obtain a divorce in that country. The court does not find credible the claim of the defendant that the plaintiff wanted to go and he relented. The defendant has throughout the marriage been in command of the home life of the plaintiff and the children. Once the plaintiff arrived in Kenya, the defendant, without [her] knowledge . . . extended the return date of her ticket and that of [the parties' eldest child] for a significant period—which period corresponded to the time she would have been required to remain in Kenya in connection with the divorce proceedings had she been served.

"The credible evidence is [that] the defendant attempted to have the plaintiff served at her mother's home in Kisumu, but that she was in Nairobi at the time the process server attempted service. The plaintiff's mother alerted the plaintiff to the service attempt, the plaintiff contacted her social worker at [the department of children and families] and an attorney in Nairobi and

decided to immediately leave the country to avoid being served. Based on the credible evidence at the trial, the court does not accept as credible the affidavit of service presented [by the defendant] as exhibit K. The plaintiff denies receiving any paperwork associated with the divorce proceedings in Kenya. She claims, credibly, [that] the defendant first provided her with proof of the proceedings when the trial in this court began. The defendant did not disclose his assets to the Kenyan court. The divorce decree obtained by the defendant in Kenya did not address the custody of the children, child support, alimony or any property distribution of the parties, other than providing that he would pay maintenance for the upkeep of the children." (Citation omitted.)

With that factual underlayment, the court analyzed the defendant's jurisdictional claim as follows: " 'A valid divorce judgment is a judgment in rem and is binding on all the world as to the existence of a status which is the subject of the action, that is, the status of being unmarried upon the adjudication of divorce.' . . . *Vogel* v. *Sylvester*, [148 Conn. 666, 670, 174 A.2d 122 (1961)]. 'Courts of the United States [however] are not required by federal law to give full force and effect to a judgment granted in a foreign nation . . . . On the other hand, judgments of courts of foreign countries are recognized in the United States because of the comity due to the courts and judgments of one nation from another. Such recognition is granted to foreign judgments with due regard to international duty and convenience, on the one hand, and to rights of citizens of the United States and others under the protection of its laws, on the other hand.' . . . *Litvaitis* v. *Litvaitis*, [162 Conn. 540, 544, 295 A.2d 519 (1972)]. . . . 'When so recognized, a decree of divorce granted in a foreign country will be given full force and effect not only as to the determination of the parties' status, but also

with respect to alimony and child support.' *Bruneau* v. *Bruneau*, [3 Conn. App. 453, 455, 489 A.2d 1049 (1985)]. There are a number of exceptions, however, to a court's application of the principle of comity, most notably, lack of jurisdiction and denial of due process of law. See *Litvaitis* v. *Litvaitis*, supra, 162 Conn. 545.

"With regard to whether a court has jurisdiction, '[t]he traditional requisite for subject matter jurisdiction in matrimonial proceedings has been domicil. . . . Regardless of its validity in the nation awarding it, the courts of this country will not generally recognize a judgment of divorce rendered by the courts of a foreign nation as valid to terminate the existence of a marriage unless, by the standards of the jurisdiction in which recognition is sought, *at least one of the spouses was a good faith domiciliary in the foreign nation at the time the decree was rendered.*' . . . Id., 545–46.

" 'To constitute domicil, the residence at the place chosen for the domicil must be actual, and to the fact of residence there must be added the intention of remaining permanently; and that place is the domicil of the person in which he has voluntarily fixed his habitation, not for a mere temporary or special purpose, but with the present intention of making it his home . . . .' *Rice* v. *Rice*, 134 Conn. 440, 445–46, 58 A.2d 523 (1948), aff'd, 336 U.S. 674, 69 S. Ct. 751, 93 L. Ed. 957 (1949). '[T]his intention must be to make a home in fact, and not an intention to acquire a domicil.' " . . . Id., 447. 'Where . . . it becomes highly advantageous to the claimant temporarily to feign an intention to become a resident for only a brief time, in order to accomplish other ends, his claim of intention will be scrutinized and weighed like any other evidence in the light of his conduct and all the circumstances surrounding it.' Id., 448. Moreover, '[a] person may have . . . only one domicil at any one time.' *Smith* v. *Smith*, 174 Conn. 434, 439, 389 A.2d 756 (1978). '[A] former

domicil persists until a new one is acquired . . . .
Therefore proof of the acquisition of a new domicil of
choice is not complete without evidence of an abandon-
ment of the old.' . . . *Rice* v. *Rice,* supra, 134 Conn.
446.

"In *Litvaitis* v. *Litvaitis,* supra, 162 Conn. 546, the
Supreme Court affirmed the trial court's refusal to rec-
ognize a Mexican divorce decree on the ground that
the defendant was not a domiciliary of the Mexican
state because he 'went to Mexico solely for the purpose
of securing a divorce and that he intended to return to
Connecticut.' More recently, the Superior Court has
noted that temporary residence does not constitute a
change in domicil when there is no intent to remain. See
*Nirookh* v. *Aburabei,* Superior Court, judicial district of
New Haven, Docket No. FA-09-4012235-S (May 25, 2010,
*Burke, J.*) [49 Conn. L. Rptr. 877] (concluding that defen-
dant was not domiciliary of Jordan where defendant
testified that he was looking for work in both Jordan
and United Arab Emirates).

"In this case, the court finds [that] the defendant left
Kenya and moved to the United States for an indefinite
period. He relinquished his Kenya citizenship to obtain
United States citizenship and became domiciled in the
United States—the Kenya divorce petition confirms the
same. He did not attend the proceedings in Kenya. He
testified that he will not be returning to Kenya at any
foreseeable time due to work. The plaintiff made it clear
[that] the family intended to live in the United States
for an indefinite time. The defendant claimed to be
domiciled in Kenya solely to take advantage of their
divorce laws; he was not, in good faith, domiciled in
Kenya at the time the divorce was rendered.

"With regard to whether a court has complied with
the requirements of due process, '[i]t is the settled rule
of [Connecticut], if indeed it may not be safely called

an established principle of general jurisprudence, that no court will proceed to the adjudication of a matter involving conflicting rights and interests, until all persons directly concerned in the event have been actually or constructively notified of the pendency of the proceeding, and given reasonable opportunity to appear and be heard. . . . It is fundamental in proper judicial administration that no matter shall be decided unless the parties have fair notice that it will be presented in sufficient time to prepare themselves upon the issue.' . . . *Hasbrouck* v. *Hasbrouck*, 195 Conn. 558, 559–60, 489 A.2d 1022 (1985). '[T]he failure of a court to comply with this requirement of notice is a serious breach of a fundamental requirement of due process of law.' *Winick* v. *Winick*, 153 Conn. 294, 299, 216 A.2d 185 (1965). 'In cases in which a divorce decree was issued in a foreign court without one party's knowledge or consent, Connecticut courts have refrained from recognizing the foreign divorce decree under comity.' *Nirookh* v. *Aburabei*, supra, Superior Court, Docket No. FA-09-4012235-S (concluding that plaintiff was denied due process because she received notice of divorce decree after it had been rendered even though it had not yet been finalized); see *Maklad* v. *Maklad*, [Superior Court, judicial district of New Haven, Docket No. FA-00-0443796-S (January 3, 2001) (28 Conn. L. Rptr. 593)]; see also *Jimenez* v. *Jimenez*, Superior Court, judicial district of New Haven, Docket No. FA-06-4020114-S (September 29, 2006, *Frazzini, J.*).

"Based on the earlier findings, the court does not find [that] the plaintiff was afforded due process." (Emphasis in original.) *Juma* v. *Aomo*, Superior Court, judicial district of Hartford, Docket No. FA-09-4046839-S (July 1, 2011).

On the basis of the foregoing,[1] the trial court concluded that neither the defendant nor the plaintiff was

---

[1] The court also noted that the defendant's jurisdictional claim had previously been decided by both Judge Dolan and Judge Prestley, and found

domiciled in Kenya, that the plaintiff was not afforded
due process in the Kenyan proceeding and that the rule
of comity was inapplicable in this instance. The court
thus denied the defendant's motion to dismiss.

On appeal, the defendant claims that the court
improperly determined that it had jurisdiction over the
parties' dissolution action. Although our review of a
question of subject matter jurisdiction is a matter of
law over which our review is plenary; *New England
Road, Inc.* v. *Planning & Zoning Commission*, 308
Conn. 180, 183, 61 A.3d 505 (2013); we see no reason
to further expound upon, and hereby adopt, the trial
court's thorough and well reasoned analysis of this issue
as set forth above.

II

The defendant also claims that the court erred in
issuing certain financial orders and orders regarding
the parties' children. It is well settled that our inquiry
in dissolution matters is whether the court abused its
discretion in fashioning its orders. See *Tuckman* v.
*Tuckman*, 308 Conn. 194, 200, 61 A.3d 449 (2013). The
defendant's claims in this regard are cursorily raised,
with little or no legal analysis, and, based on their lack
of merit, require little discussion.

First, the defendant claims that the court improperly
issued an order for work-related child care expenses
that included after school work programs and extracur-
ricular activities. The defendant claims: "The purpose
of child care is to ensure that parents go to work and
therefore any other child care expenses should not be
included as it can only be discretionary." The foregoing
constitutes the defendant's entire analysis of this claim
and we are thus left to speculate that he must be taking

that their rulings constituted the law of the case. The court nevertheless
reexamined the issue and came to the same conclusion.

issue only with the court's order requiring him to share the expenses for the children's extracurricular activities. We cannot conclude that the court abused its discretion in issuing this order.

The defendant also claims that the court erred in ordering periodic alimony on the bases that "[his] net worth cannot support the payment and will diminish the lifestyle that he has maintained." The defendant's argument does not provide a basis in law for this court to conclude that the trial court abused its discretion in awarding the plaintiff periodic alimony.

Similarly, the defendant fails to provide this court with a legal basis to find error in the court's order that he maintain life insurance for the benefit of his children and to secure the alimony award to the plaintiff in his argument that "[r]equiring him to maintain [such a policy] against his practice or custom is unreasonable."

The defendant also claims that "[t]he trial court made an error . . . entering child visitation and custody orders and ignored one child's needs in entirety and thereby abus[ed] its discretion of making decisions that are in the best interest[s] of the children. As a result, the orders do not encourage the children's happiness, security, mental health and emotion development into young adults. The orders essentially marginalized the children from the [defendant] and in essence prevented the [defendant] from parenting his children." This constitutes the entirety of the defendant's challenge to the trial court's orders regarding the parties' children. Because the defendant fails to point to any specific orders of the trial court in support of his claim, and his claim is, like his others, devoid of any legal analysis or citation, we cannot conclude that the court abused its discretion.

The defendant next claims that the court improperly "distribut[ed] various retirement assets that neither the

defendant nor the plaintiff had contributed to as if they were contributed to by contributions from the marriage." He claims that the plaintiff was not entitled to any share of his retirement assets because she did not contribute to them and the assets were not obtained by him as a result of his marital status. The defendant has again failed to provide any legal support for this claim, and we are aware of none.

The defendant finally claims that the court improperly ordered him to pay a debt to the parties' former landlord that he claims to have been accrued as a result of the plaintiff and the parties' children continuing to reside at the premises after he had moved out. The defendant claims that the debt arose as a result of the negligence of the plaintiff and refers to General Statutes § 46b-37 in purported support of his claim. The defendant fails, however, to indicate how § 46b-37, or any subsection thereof, applies to this claim. On the basis of the record before us, we cannot conclude that the trial court abused its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.