FLORENCE D. MILLS vs. WINFIELD S. MILLS ET AL.

MALTBIE, C. J., HAINES, BANKS, AVERY and JENNINGS, Js.

Argued February 7th—decided April 3d, 1935.

*Wilbur S. Wright,* for the appellant (plaintiff).

*Nehemiah Candee* and *John Keogh, Jr.,* for the appellee (defendant Madeline Hulse Mills).

AVERY, J. The plaintiff married the defendant Winfield S. Mills in 1908 at Greenwich and lived with him there as his wife until October, 1931. She brought the present action by writ dated March 22d, 1933, against the defendants, Winfield S. Mills and Madeline Hulse Mills, and asked for a declaratory judgment decreeing that the divorce obtained in Nevada by the defendant Winfield S. Mills from the plaintiff on January 9th, 1932, be declared a colorable one, and that it did not dissolve the marriage relation between the plaintiff and Mills, and that they are still husband and wife. The case was tried to the court, and judgment entered that the plaintiff was not entitled to the relief prayed for.

The conclusion of the court was based upon four propositions: First, that the Nevada divorce obtained by the defendant Winfield S. Mills from the plaintiff was valid; second, that if it was not valid, the plaintiff could not attack it by reason of collusion in obtaining

it; third, that the plaintiff could not maintain the present action by reason of collusion between herself and her former husband in relation to the present action; and fourth, laches. These conclusions are attacked by the appellant in the present appeal.

The appellant has asked for certain corrections and additions to the finding. So far as is material to the determination of the questions of law involved upon this appeal, the finding of the court with such corrections as the appellant is entitled to, discloses the following pertinent facts: Florence Dean Davison and Winfield S. Mills married at Greenwich on October 29th, 1908, and continued to reside there until October, 1931, when he left his home and went, with Madeline Hulse, to Reno, Nevada. The latter was a nurse employed in a hospital at White Plains, New York. She became acquainted with Mills in 1917. He called on her regularly thereafter from 1918 to 1931. During this time, she was unaware of the fact that he was a married man. He became engaged to her in 1918 and in 1924 gave her an engagement ring. In 1931, he agreed to drive with her to the west coast, and marry her and settle wherever they could find work. He told her he had a sister in California and they would go there and be married and settle when they found a place where they wanted to live. The plaintiff did not know of the intimacy between her husband and Miss Hulse. Early in October, 1931, he told his wife that he was going to take a trip and would be back in two or three weeks, and left Greenwich in his automobile, joined the defendant Madeline Hulse at East Moriches, Long Island, and proceeded west. Shortly before his departure, Mills had talked with his wife with reference to a divorce and made a property settlement with her, wherein he deeded to her a half-interest in the house in which they were living, which had been in-

herited by him from his foster father. His wife knew, or at least suspected, that he was going away with the intention of securing a divorce.

He took with him two bags of clothing. When he left the East with Miss Hulse, they had a definite intention of never returning to Connecticut to live. Mills had no intention of making a permanent abode in any particular place. Miss Hulse did not know that Mills was married until they were well across the continent, when he told her that they were on their way to Reno in order that he might obtain a divorce. They reached Reno about October 20th; while there Mills lived, for a period of six weeks, in a furnished room at the Young Men's Christian Association, and procured his meals at different places. Thereafter, and until he left Reno, he lived in a rooming house on a side street. Before departing from the East, he had packed some of his belongings and left them with a friend. While at Reno, he did not send for any of his packed goods. Miss Hulse hired and lived in an apartment. Mills found a little painting to do and earned a small amount of money, but could not find any work of a substantial nature although constantly seeking it. It was definitely agreed between them that if he found work, they would be married in Reno as soon as the divorce was granted, and would settle there and live in her apartment. He was unable to find work, so they decided to go on west, and left on the afternoon of the day the divorce was granted, January 9th, 1932. Mills, while stopping at the Young Men's Christian Association, bought no furniture or equipment for his room; he did not join it or any organization while there; he opened no credit accounts in any store; he did not apply to be made a voter; and he kept his wearing apparel in his two traveling bags. Neither he nor Miss Hulse ever returned to Nevada.

The trial court found that at the time of procuring the divorce, Mills' intention was to remain in Nevada for an indefinite period and to live there indefinitely if he could find work, and that he had no intention of making a home elsewhere and that Reno was his bona fide domicil; also that it was definitely agreed between Mills and Miss Hulse that if he found work, they would be married in Reno as soon as the divorce was granted and would settle there in her apartment, but that he was unable to find work and they decided to go on to the coast. These findings, except the last, are attacked in the assignments of error, and an examination of the evidence requires an interpretation of the finding as meaning no more than that when Mills and Miss Hulse went to Reno, the time of their departure was not fixed. It was their intention to remain there until he had secured a divorce and, thereafter, to marry and settle in her apartment in the event that he could secure employment. Domicil, on the part of the plaintiff, was a necessary condition precedent to the jurisdiction of the Nevada court. To constitute domicil, the residence at the place chosen for the domicil must be actual, and to the fact of residence there must be added the intention of remaining permanently; and that place is the domicil of the person in which he has voluntarily fixed his habitation, not for a mere temporary or special purpose, but with the present intention of making it his home, unless or until something which is uncertain or unexpected shall happen to induce him to adopt some other permanent home. *Gildersleeve* v. *Gildersleeve*, 88 Conn. 689, 692, 92 Atl. 684; *Foss* v. *Foss*, 105 Conn. 502, 508, 136 Atl. 98; *State* v. *Cooke*, 110 Conn. 348, 351, 148 Atl. 385.

When the parties left this State with the intention of never returning, their domicil in Connecticut was not thereby changed. The former domicil persists un-

til a new one is acquired. *McDonald* v. *Hartford Trust Co.*, 104 Conn. 169, 177, 132 Atl. 902; *Shaw* v. *Shaw,* 98 Mass. 158, 160. The residence of the parties in Nevada with the intention of remaining there permanently after Mills should secure a divorce if he could find work did not operate to establish for him a domicil in Nevada. This principle is well settled. *Ross* v. *Ross,* 103 Mass. 575, 576; *Denver* v. *Sherret,* 88 Fed. 226, 227; 19 C. J. 408; 9 R. C. L. 542. "For the acquisition of a domicil of choice the intention to make a home must be an intention to make a home at the moment, not to make a home in the future. *Comment: a.* In order to possess the requisite intention, one must be able to say not, this is to be my home, but, this is now my home. . . . *Comment: b.* The intention to make a home must be an unqualified one, not conditional on the happening of a future event. But if there is an intention to make a home at present, the intention is not a qualified one because the person whose domicil is in question intends to change his home upon the happening of some future event." Amer. Law Institute Restatement, Conflict of Laws, § 20. The subordinate facts and the evidence do not support the finding of the trial court that Reno was the bona fide domicil of the defendant Mills during his sojourn in Nevada. We conclude that as Florence D. and Winfield S. Mills were married in Connecticut and lived there as husband and wife until he deserted her in 1931 and went to Nevada, the domicil of matrimony between these parties was Connecticut and there remained. *Haddock* v. *Haddock,* 201 U. S. 562, 26 Sup. Ct. 525, 527. Furthermore, she remained in Connecticut and did not appear and was not represented in the Nevada case, while Mills, the plaintiff in that action, who went to Nevada merely for the purpose of obtaining a divorce and with no bona fide intention of estab-

lishing a permanent residence there, was not a domiciled resident of Nevada at the time the action was brought or the judgment rendered. It follows that the District Court of the Second Judicial District of the State of Nevada in the county of Washoe was without jurisdiction to enter any judgment affecting the status of Florence D. Mills as wife of the defendant Winfield S. Mills; and she is entitled to a judgment declaring that the decree of divorce did not affect the marriage relations between her and the defendant.

The court also found that there was collusion between the plaintiff and her husband in the procurement of the Nevada divorce. As employed in the law of divorce, collusion means an agreement between the parties to defraud or impose upon the court. This may be accomplished as well by agreeing to make up a false case as by agreeing to withhold from the court evidence which, if disclosed, might affect the court in its disposition of the case. *Behrmann* v. *Behrmann,* 110 Conn. 443, 448, 148 Atl. 363; *Berman* v. *Bradford,* 127 Me. 201, 142 Atl. 751, 752; *Sheehan* v. *Sheehan,* 77 N. J. Eq. 411, 413, 77 Atl. 1063; *Seeley's Appeal,* 56 Conn. 202, 14 Atl. 291; Keezer, Marriage & Divorce, § 420. The facts found bearing upon the question of collusion in the Nevada action are that the present plaintiff received a deed of property by way of settlement from her husband shortly before he left for Nevada. At that time she knew that he was leaving to obtain a divorce. She did not know of his relations with Miss Hulse nor is it found that she knew where he was going. She received notice of a divorce proceeding instituted at Reno, his attorney in that action having written to her enclosing a power of attorney for her to sign authorizing her appearance thereunder. On receipt of this letter, she consulted counsel at Greenwich. She did not execute the power of attorney or

enter an appearance or take any steps to intervene in the Nevada action, although she had means sufficient to have enabled her to have gone there or to have employed counsel to represent her. A conveyance from husband to wife, when made not to facilitate divorce but solely as an amicable settlement of property affairs made in view of divorce proceedings already independently instituted or determined upon, is not necessarily contrary to public policy and void unless concealed from the court. *Maisch* v. *Maisch,* 87 Conn. 377, 383, 87 Atl. 729; *McCarthy* v. *McCarthy,* 36 Conn. 177, 180. The plaintiff was not bound to follow her husband to Nevada and there defend against his suit. "It can never be collusion for the defendant simply, and without any understanding with the plaintiff, to abstain from making a defence." 2 Bishop, Marriage, Divorce & Separation, § 253. There is nothing in the finding which indicates that the plaintiff refrained from making a defense in the Nevada suit because of any agreement with her husband or that she is any way agreed with him to impose upon the Nevada court.

The trial court found that there was collusion in the present action, but the plaintiff attacks this finding. The pertinent facts as found by the court with reference to this matter are: The defendant Winfield S. Mills married Madeline Hulse in California in February, 1932. They returned to Northport, Long Island, in the summer of 1932, where they lived on a boat until his funds became exhausted, when he deserted her; and after the desertion he began frequently to visit the plaintiff. They agreed to live together in case the plaintiff prevailed in this action. Mills, although made a party defendant, did not enter an appearance but, being summoned as a witness and examined by the counsel for the plaintiff, testified willingly and

eagerly in her behalf, and, though nominally a defendant, he was in reality a plaintiff.

The finding does not contain any statement that Mills did in fact testify falsely or that he agreed with the plaintiff to so testify, or that there was any agreement between the plaintiff and Mills to testify falsely or impose upon the court in any particular. The fact that Mills desired the plaintiff to recover judgment, that he interposed no defense in the action, and, when summoned as a witness, testified in her favor, does not establish collusion between those persons in the present case in the absence of any finding of an agreement between them to testify or impose upon the court in some manner. *Pohlman* v. *Pohlman*, 60 N. J. Eq. 28, 46 Atl. 658, 659; *Drayton* v. *Drayton*, 54 N. J. Eq. 298, 38 Atl. 25, 28. The defendant in a divorce suit is not bound to make a defense and mutual assistance in proving the actual facts does not amount to collusion. *Blank* v. *Nohl*, 112 Mo. 159, 20 S. W. 477, 18 L.R.A. 350, 352.

From the finding, it appears that the defendant married Miss Hulse within a month of the divorce decree at Reno, and that the marriage occurred in California. The plaintiff could not have reasonably been expected to have followed the parties to California and institute a proceeding to test the validity of the divorce within that period of time. Laches in legal significance is not mere delay but delay that works a disadvantage to another. *Chase* v. *Chase*, 20 R. I. 202, 204, 37 Atl. 804. The defendant Madeline Hulse, before she arrived at Reno with Mills, knew that he was a married man. She lived in Reno all the time he was there and knew the circumstances in connection with his residence. Any delay on the part of the plaintiff in bringing suit to test the validity of the Nevada decree did not prejudice the rights of Miss Hulse, who married Mills within

a month of the divorce judgment with full knowledge of the circumstances. *Hollingshead* v. *Hollingshead,* 91 N. J. Eq. 261, 110 Atl. 19, 26; *Watkinson* v. *Watkinson,* 67 N. J. Eq. 142, 58 Atl. 383, 390.

There is error; the case is remanded to the Superior Court with direction to enter judgment in accordance with this opinion.

In this opinion the other judges concurred.