MARY LOUISE LASPROGATO *v.* JOSEPH LASPROGATO.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

■■■■■■■■■■■■■■■■■■■■■■■

Argued December 6, 1940—decided February 7, 1941.

■■■■■■■■■■■■■■■■■■■■■■■■

*John Keogh, Jr.,* with whom, on the brief, was *Nehemiah Candee,* for the appellant (defendant).

*Samuel R. Sallick,* with whom was *William F. Tammany,* for the appellee (plaintiff).

AVERY, J. The finding of the court discloses these facts: The parties in this case were husband and wife. On November 17, 1936, the plaintiff commenced an action against the defendant for divorce, alleging intolerable cruelty and adultery. In his answer, the defendant denied the allegations of the complaint and in a cross-complaint alleged that the plaintiff had been guilty of intolerable cruelty. On the day of the trial, the parties and their attorneys met and conferred with reference to a settlement of their property rights and the matter of a portion of the defendant's estate being assigned to the plaintiff in the event that it should be adjudged that the plaintiff be divorced from the defendant. The plaintiff demanded a stated sum of money in addition to other property. The defendant agreed to the amount of money and other property demanded by the plaintiff, but stated that it was impossible for him to pay the money in one payment and agreed to pay it over a period of six years in weekly

payments of $25 each. At this conference, the plaintiff agreed that the payment of the money should be made over such a period, and the parties executed a written agreement set forth in the footnote.[1] On April 12, 1938, the court, having heard the parties, found the issues for the plaintiff and entered judgment of divorce, the judgment file embodying the provisions of the written agreement between the parties, although the agreement itself was not incorporated or referred to in it. Among other provisions of the judgment was

---

[1] STIPULATION IN RE ALIMONY. IT IS HEREBY STIPULATED AND AGREED that the Defendant will pay the Plaintiff Twenty-five ($25.00) Dollars per week alimony for a period of six (6) years from date of entry of decree, such payments to be made directly to the Plaintiff. IT IS FURTHER STIPULATED AND AGREED that the Defendant will, upon the entry of a decree of divorce, convey by quit claim deed to the Plaintiff all of his interest in and to the real estate consisting of land and buildings now owned in equal and undivided shares by the Plaintiff and Defendant, which real estate is located at Nos. 100 and 102 South Main Street, South Norwalk, Connecticut. IT IS FURTHER STIPULATED AND AGREED that the Plaintiff upon the entry of a decree of divorce shall pay over to the Defendant whatever rent collections from said real estate she now has on hand. AND IT IS FURTHER STIPULATED AND AGREED that the Defendant will pay whatever interest and taxes as are at the present time in arrears on said real estate. IT IS FURTHER STIPULATED AND AGREED that the Defendant will pay to the Plaintiff Ten ($10.00) Dollars per month as rental for three garages and so much of the yard as he is now using on said premises. Said rental is to terminate at the option of either party. IT IS FURTHER STIPULATED AND AGREED that the Defendant will make necessary repairs now needed on the buildings on said real estate, including heating and plumbing, and will also paint the outside of said dwelling one coat, such painting to be done within six (6) months from the date of the decree. The Defendant assumes and agrees to pay certain notes amounting to about Twenty-Four Hundred ($2400.00) Dollars, which have been discounted in the South Norwalk Trust Company, on which the Plaintiff is now primarily or secondarily liable. This Stipulation is subject to the approval of the Court in the event of a decree of divorce being entered in said action.

(Signed)

Mary L. Lasprogato<br>Joseph Lasprogato

one requiring the defendant to pay to the plaintiff, by way of alimony, $25 per week for a period of six years. The defendant made the weekly payments up to November 10, 1938, since which time he has made no weekly payments and has also neglected to pay one-half of one year's tax on the real estate in accordance with the provisions of the "Stipulation" between the parties and the judgment file. On November 12, 1938, the plaintiff married John Scarpone and they are living together as husband and wife. Thereafter, on July 11, 1939, the defendant moved the court that the judgment of divorce be modified by revoking the order requiring the defendant to pay the plaintiff $25 per week, and that such order of revocation be dated as of the date of the plaintiff's remarriage. The defendant's motion to modify the judgment was denied by the court and he has appealed. While under the terms of the decree the defendant was in contempt when his motion was made, since the motion sought relief as of the date of the plaintiff's remarriage, was filed within a reasonable time thereafter, and involved a question upon which the law of this jurisdiction was uncertain, the court was warranted in entertaining it.

The trial court took the view that the document signed by the parties at the time of the divorce trial, although called a stipulation, was in fact a contract and that this agreement having been approved by the court and its provisions embodied in the judgment, it was binding on the parties and not subject to modification by the court without the consent of the parties. It is unnecessary for us to determine on this appeal whether the document signed by the parties was in fact a contract or, as its name seems to suggest, a mere stipulation intended by the parties as a suggestion to the court as to the provisions which should be inserted in the judgment file. In *Maisch* v. *Maisch*, 87 Conn.

377, 87 Atl. 729, we held that contracts between husband and wife made in settlement of their property affairs, in view of divorce proceedings instituted or determined upon, were not necessarily contrary to public policy and void, unless concealed from the court. "If submitted to and approved by the court with full opportunity for scrutiny before the decree, they are unobjectionable; but, if concealed from the court, they are contrary to public policy and will not be enforced unless in extreme cases where the refusal to do so would assist in the perpetration of an intentional fraud." (p. 383). *Weil* v. *Poulsen,* 121 Conn. 281, 286, 184 Atl. 580; *Mills* v. *Mills,* 119 Conn. 612, 620, 179 Atl. 5. Such contracts are enforced by actions brought upon the contracts themselves and the remedies are no other or different than the remedies provided by law for the breach of any other contract. Where the payment of alimony is ordered in a judgment of divorce, if the terms of the judgment are not complied with the offended party has a remedy by contempt.

General Statutes, § 5182, provides: "Any order for the payment of alimony from income may, at any time thereafter, be set aside or altered by such court." The great weight of authority seems to uphold the principle that where a court has general power to modify a decree for alimony or support, the exercise of that power is not affected by the fact that the decree is based on an agreement entered into by the parties to the action. Notes, 58 A. L. R. 639; 109 A. L. R. 1068. In *Goldman* v. *Goldman,* 282 N. Y. 296, 300, 26 N. E. (2d) 265, it was held that a decree for alimony incorporating the stipulations of a prior separation agreement could be modified; and it was pointed out that the power of the court to make suitable provision for the support of the wife was complemented by the

statutory power to annul, modify or vary the decree thereafter, that a party invoking the power of the court to give such a decree could not be heard to say that it was not subject to modification thereafter, and that while by such a modification the plaintiff might be deprived of the drastic provisions for the enforcement of decrees for alimony, this would not debar the plaintiff from invoking the usual remedies for the breach of a contractual obligation, if there was one. In the instant case, the agreement of the parties was not incorporated or referred to in the judgment, although its provisions were embodied therein. In so far as the right to continued payments of alimony depends upon the judgment, the latter is subject to modification. In *Cary* v. *Cary*, 112 Conn. 256, 260, 152 Atl. 302, we held that "Alimony of a specific part of the estate, or of a specific sum of money, when transferred to the wife passes out of the control of the court making the award," but that alimony of a sum to be paid periodically in lieu of the assignment of a part of the estate of the husband does not fall within this rule, and that the power of the court to vacate or modify the judgment of alimony from income in a proper case is fully authorized by our statute, and we stated (p. 261): "The better rule which we adopt, save in the most exceptional circumstances, draws from the voluntary action of the wife in remarrying the inference that she has elected to obtain her support from her second husband and has thereby abandoned the provision made for her support by the court in its award of alimony." Whether such exceptional circumstances exist is for the trial court primarily to determine and as the basis of its decision was that, in view of the fact that the decree incorporated the provisions of the agreement, it had no power to grant the

motion, the case should be remanded for further proceedings.

In a divorce action judgment for alimony should not incorporate a prior agreement of the parties but if they make an agreement, the terms of which appear to the trial court to be fair and proper, those terms may be included in the decree without incorporating therein the agreement, as such, or referring to it. The form of the original judgment in this case was correct in that respect.

There is error, and the case is remanded to the Superior Court for further proceedings in accordance with law.

In this opinion the other judges concurred.