## PATRICIA M. RIFKIN *v.* SAMUEL RIFKIN

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued March 7—decided April 19, 1967

*Howard A. Sackett,* for the appellant (plaintiff).

*John J. Darcy,* for the appellee (defendant).

HOUSE, J.  This action was brought to recover weekly support payments accrued since 1952 under the terms of a property settlement and separation

agreement executed under seal by the parties in 1951, when they were husband and wife. The plaintiff claims that, in rendering judgment for the defendant, the trial court erroneously concluded that "[t]he agreement was made to facilitate the plaintiff's out of state 'quickie' divorce rather than for the sole purpose of amicably settling their property affairs; and, therefore, said contract is void and unenforceable as against public policy." Although on this appeal the plaintiff also assigned other errors, the decisive question is whether the facts support this basic conclusion. The plaintiff is not entitled to any correction in the finding of facts and was not harmed by the assigned errors with respect to her claims of law, which, even if properly presented on the record, were, so far as relevant to this decision, merely the converse of the court's conclusion of law with respect to the unenforceability of the contract.

It is true that the court in its finding failed to include any claims of law made by the plaintiff respecting the judgment to be rendered, together with the rulings thereon. Section 619 of the Practice Book expressly provides that the court shall include these claims in its finding if any such claims were in fact made to it. It is also true that the draft finding contains a statement as to the claims of law which the plaintiff asserts she made and the court ruled on, as required by Practice Book § 614 and as indicated in Form No. 603 (A), fourth paragraph. Upon the court's failure, however, to comply with § 619 and to include the claims and rulings in the finding, if the claims were in fact made, it was incumbent upon the plaintiff to seek a rectification of the appeal pursuant to § 675 of the Practice Book. Failure to do so leaves this court unable

to determine from the record whether or not in fact the plaintiff made any claims of law to the trial court. Since, on the issue which is determinative of this appeal, the court's application of law to the facts was the converse of that which the plaintiff asserts she claimed to the court, the same question of law is presented for our consideration, and the plaintiff is in no way harmed by this assigned error.

The question of the validity and enforceability of the contract was expressly raised by a special defense pleaded by the defendant. In her reply to this pleading, the plaintiff admitted that the agreement was not examined, approved or adopted by any court of this state or by the Arkansas court which granted her a divorce decree on March 17, 1952.

In *Maisch* v. *Maisch,* 87 Conn. 377, 87 A. 729, we stated the principles which govern the question of the enforceability of such a contract as that between these parties fixing by mutual agreement the amounts to be paid by the husband in lieu of alimony. We there referred to the earlier case of *Seeley's Appeal,* 56 Conn. 202, 206, 14 A. 291, in which this court said: "Courts will not enforce any contract which is the price of consent by one party to the marriage relation, to the procurement of a divorce by the other." In the *Maisch* case, we further indicated (p. 383) that the contract in that case was objectionable because the court was left to rest a divorce decree upon evidence which did not include all the facts in the case, which objection "goes to the root of the matter." We also (p. 383) said of such agreements as that here involved: "Such contracts, when made not to facilitate divorce but solely as an amicable settlement of property affairs, and made in view of

divorce proceedings already independently instituted or determined upon, are not necessarily contrary to public policy and void, unless concealed from the court. If submitted to and approved by the court with full opportunity for scrutiny before the decree, they are unobjectionable; but, if concealed from the court, they are contrary to public policy and will not be enforced unless in extreme cases where the refusal to do so would assist in the perpetration of an intentional fraud." We have frequently cited and approved this rule. *Whitney* v. *Heublein,* 145 Conn. 154, 160, 139 A.2d 605; *Koster* v. *Koster,* 137 Conn. 707, 711, 81 A.2d 355; *Hooker* v. *Hooker,* 130 Conn. 41, 47, 32 A.2d 68; *Lasprogato* v. *Lasprogato,* 127 Conn. 510, 513, 18 A.2d 353; *Weil* v. *Poulsen,* 121 Conn. 281, 286, 184 A. 580. It is not without significance that in each of the cited cases the terms of the separation agreement and support arrangements were disclosed to the court which rendered the decree of divorce.

The facts amply support the conclusion of the trial court that this agreement was not one for the sole purpose of amicably settling the parties' property affairs but, rather, was made to facilitate a divorce which the plaintiff had already decided to secure in some jurisdiction catering to temporary residents seeking a quick and easy dissolution of the bonds of matrimony. When the agreement was signed, both parties lived in Connecticut and had been separated only for about one week. The agreement had been prepared by the plaintiff's attorney and, as the plaintiff's "first step" in the ultimate termination of her marriage, was presented for the defendant's signature on October 4, 1951, in that attorney's office. The defendant signed after a short discussion. The agreement provided for a division

of the parties' property and, from the defendant, an immediate cash payment, $60 per week until January 6, 1952, and $25 per week thereafter during the life of the defendant and until the plaintiff's remarriage. The plaintiff agreed not to seek any allowance or alimony except as expressly provided in the agreement. Before Christmas, 1951, the plaintiff went to Arkansas "to establish residence for her divorce." The finding is not explicit with respect to how long, if at all, the plaintiff actually resided in Arkansas, but it appears that she "returned to Arkansas 'sometime after Christmas, 1951' or 'sometime in February of 1952' after her residence had been completed" and obtained a divorce on March 17, 1952. The divorce decree contained no provision for alimony, and the separation agreement with its provisions for the plaintiff's support was not examined, approved or adopted by the Arkansas court.

In this proceeding, the validity of the Arkansas divorce decree is not in issue, nor is it any part of the public policy of Connecticut to protect the divorce courts of Arkansas against collusion or misrepresentation. As a matter of public policy, however, as we stated in *Maisch* v. *Maisch,* 87 Conn. 377, 383, 87 A. 729, the courts of Connecticut will not, except to avoid the perpetration of an intentional fraud, enforce a contract between a husband and a wife fixing the amounts to be paid by the husband in lieu of alimony when the agreement has been made not solely as an amicable settlement of property affairs but to facilitate a divorce already instituted or determined upon. In the light of all the circumstances surrounding the execution of this agreement preliminary to the plaintiff's departure to institute divorce proceedings in another jurisdic-

tion, we cannot say that the trial court could not reasonably and logically conclude that under the rule as enunciated in *Maisch* v. *Maisch,* supra, the agreement between these parties was unenforceable.

There is no error.

In this opinion the other judges concurred.