Nesta E. Walden *v.* Daniel E. Lattarulo

Appellate Division of the Circuit Court

File No. CV 9-6612-3806

Argued November 18, 1968—decided March 21, 1969

*William P. Lage,* of Madison, for the appellant (plaintiff).

*Norman Sivin,* of Old Saybrook, for the appellee (defendant).

Kosicki, J.   The complaint, which was in two counts, sought to recover weekly support payments claimed to be due since June, 1966, under a contract entered into by the parties on December 31, 1965, when they were husband and wife, and to recover the plaintiff's legal expenses in this action.   The court rendered judgment for the defendant on each count.   On the first count the court concluded that the separation and property settlement agreement omitted several important items and, therefore, did not adjust and dispose of all the related property interests of the parties; that the agreement was not designed nor entered into for the sole purpose of settling amicably the property affairs of the parties; that the confrontation between the plaintiff and the defendant on December 27, 1965, and the rapid sequence of events between the 27th and the 31st, including the execution of the mentioned agreement, were all part of a plan to facilitate the plaintiff's "quickie" divorce, which followed eleven days later in Juarez, Mexico; and, therefore, that the agreement was void and unenforceable as against public policy.   As to the second count, the court concluded that there was no legal or equitable justification for awarding counsel fees.

With such corrections as were made by the court and those warranted by the motion to correct, the following facts were found.

The plaintiff and the defendant were married on September 14, 1940.   For some years prior to their separation on December 27, 1965, the parties did not live as man and wife.   Over an unspecified period of time the parties owned and operated the New Deal

Laundry. Because of serious illness, the defendant ceased to be active in the business and the plaintiff carried on alone for one year and then closed out the business. The plaintiff's mother gave her two parcels of land in Chester, with a house located on one of them. The mother retained life use of the property. Between 1947 and 1962, the plaintiff acquired four additional parcels of residential property, all of which were purchased by the plaintiff with her own money, but the legal title to three of them was mistakenly placed in the joint names of the plaintiff and the defendant. The defendant executed notes and mortgages jointly with the plaintiff at the time title to the property was transferred. On August 21, 1962, at the instigation of the plaintiff, the defendant went to her lawyer's office and quitclaimed to her his interest in the said three properties. The mortgage payment books were transferred into the plaintiff's name alone but, through oversight, the defendant was not released from the mortgage notes. The tax assessments on these properties, at 50 percent of market value, totaled approximately $53,000.

The plaintiff claims that she decided to divorce the defendant about seven years before initiating the proceedings because of his improper advances toward the plaintiff's niece and ward, a minor child. The plaintiff's subsequent discovery of repetitions of such improper advances by the defendant came after August 21, 1962. On December 27, 1965, the parties were dwelling separately in one of the houses acquired by the plaintiff. As of that date the plaintiff had been working for some years at G. Fox and Company, a department store in Hartford. The defendant, who had left school in the eighth grade, was employed in Bill Hahn's Restaurant at $115 per week. On this date, or shortly prior thereto, the plaintiff consulted Attorney William P. Lage re-

garding a divorce. She made a partial disclosure of her financial situation and of the related property interests of the parties. On December 27, at about 8:30 p.m., the plaintiff came home, accompanied by a friend, Mrs. Ann Foggitt, a nurse. In her presence she informed the defendant that he would have to leave the house that night and that she. had thought over their marital situation and had decided to divorce him. The plaintiff informed the defendant that he would need legal representation in Mexico, that he could have his own Connecticut attorney select a Mexican lawyer, in which event he would have to pay his own counsel, or he could have the plaintiff's attorney make the selection, in which case the plaintiff would bear the expense of the Mexican attorney. The defendant chose the latter alternative. On or about December 29, 1965, the parties met at the office of Harry Archambault, an insurance agent and notary public, and the defendant executed a special power of attorney appointing Oscar Gutierrez as his attorney to represent him in the divorce proceedings, based on incompatibility of temperament, in the state of Chihuahua, republic of Mexico. On December 31, the parties met at the office of the plaintiff's attorney and the defendant read and executed with the plaintiff a separation and property settlement agreement prepared by the plaintiff's attorney. On January 11, 1966, the plaintiff was granted a divorce in the First Civil Court, Bravos District, state of Chihuahua, republic of Mexico, on the ground of incompatibility of temperament. In accordance with the provisions of the agreement, it was offered in evidence in the divorce action and the court confirmed, ratified, and incorporated the contract by reference into the divorce decree and expressly declared it not to be merged in the decree and to survive it; and the parties were ordered to comply with all the terms and conditions

of the agreement. The court was held in Juarez during the plaintiff's stay there of about twenty-four hours.

The separation and property settlement agreement provided that the defendant, during his lifetime, pay to the plaintiff the sum of $30 weekly for life or until her remarriage. It also provided for a contemporaneous assignment by the defendant to the plaintiff of all his interest in an indenture of trust known as Commonwealth Fund. The agreement also provided for the mutual division of 107 shares of jointly held stock of Fundamental Investors, to be registered in their individual names with 54 shares registered to the plaintiff and 53 shares to the defendant. The plaintiff agreed to transfer and did transfer to the defendant a 1958 Dodge station wagon then registered in her name. Nothing was mentioned in the agreement concerning 39 shares of Kaman Aircraft stock which had been purchased by the plaintiff and registered in the defendant's name, or some Hartford Electric Light Company stock. These together were divided amicably between the parties following the execution of the contract. The plaintiff later sent the defendant his Provident Mutual Life Insurance policy.

In paragraph seven, the parties released each other from all claims except those contained expressly in the agreement. In paragraph ten, the agreement provided that each party shall at any time and from time to time take any and all steps and execute, acknowledge and deliver to the other party any and all further instruments and assurances that the other party may reasonably require for the purpose of giving full force and effect to the agreement. Provision was also made that no modification or waiver shall be valid unless in writing and signed and acknowledged by both parties,

and that the agreement was binding on the parties, their heirs at law, next of kin, distributees, executors, administrators and other personal representatives. Before executing the agreement, the defendant made no mention of the real property, and there is no evidence to show that he contributed toward its purchase, nor did he ever make a payment on any of the mortgages; on the contrary, he had frequently expressed a marked distaste for having anything to do with the real estate, its maintenance, upkeep or management. Prior to executing the property settlement agreement, the defendant read its provisions, stated that he did not want to consult his own attorney, and signed and acknowledged the document.

As stated above, the court concluded, for the reasons noted, that the agreement was void and unenforceable as against public policy. It also concluded on the second count that the plaintiff had retained her counsel's services to enforce her claim to support payments under the terms of the separation and property settlement agreement and that there was no legal or equitable justification for the award of counsel fees.

The defendant has placed his maximum reliance on *Rifkin* v. *Rifkin*, 155 Conn. 7, 8, in which the validity and enforceability of a property settlement and separation agreement were the decisive issue, and the judgment of the trial court holding the agreement void and unenforceable as against public policy was affirmed on appeal. In that case, the decision was substantially, if not entirely, based on the admitted fact "that the agreement was not examined, approved or adopted by any court of this state or by the Arkansas court which granted" the divorce. Id., 9.

The situation in the case before us differs from *Rifkin* in many essential respects which in our

opinion render the rule followed by the court inapplicable. The parties here had been separated as man and wife for several years before the ouster of the defendant from the plaintiff's house actually occurred. Admittedly, the decision to seek a divorce was actuated significantly by the defendant's improper advances toward the plaintiff's niece and ward, who was then a minor. We cannot obliterate that fact in order to arrive at a consistent conclusion that the sole purpose of the agreement was to facilitate a "quickie" divorce, thus rendering the agreement void and unenforceable as against public policy. The transcript having reference to these incidents, which we have read to clarify the finding, leads to no reasonable inference that these advances were innocuous and the touching of the body was as innocent as a game of tag. There further seems to be no serious disagreement as to the testimony of the plaintiff that, in deciding upon a foreign divorce, she did so not because she had no cause for divorce in this state but because she did not wish to harm the reputations of her niece and the defendant.

"While contracts between husband and wife regarding property settlements entered into prior to the institution of proceedings for divorce should be carefully examined, they are not necessarily contrary to public policy and void unless they are concealed from the court. If they are submitted to the court for approval, and full opportunity is given for scrutiny and ascertainment of the facts, they are unobjectionable. *Koster* v. *Koster,* 137 Conn. 707, 711 . . . ." *Whitney* v. *Heublein,* 145 Conn. 154, 160; *Mills* v. *Mills,* 119 Conn. 612, 619, 620.

In the present case, the validity of the Mexican divorce was not in issue, nor was it found by the court that the divorce was a nullity. Under the rule quoted above, there was compliance by the parties in

that each was represented by counsel during the divorce proceedings and the agreement was submitted to the court for approval and confirmed, ratified and incorporated by reference in the divorce decree. The court expressly declared that the agreement was not merged with the decree but was to survive the decree, and the parties were ordered to comply with all the provisions of the agreement.

The situation before us, on the questions of law involved, is not fundamentally different from that presented in the cases cited in support of the above rule as set forth in *Rifkin* v. *Rifkin,* supra, 10. In *Maisch* v. *Maisch,* 87 Conn. 377, 381–83, a contract for future support and maintenance made by the parties while residing in South Dakota and reciting that the plaintiff had commenced an action for divorce in a South Dakota court in which the defendant appeared and answered—the only question left for decision being whether the plaintiff was entitled to a divorce—was held, in a suit on the agreement, to be enforceable and not against the public policy of Connecticut. There, the agreement was not concealed from the South Dakota court. See *Whitney* v. *Heublein,* supra, and *Koster* v. *Koster,* supra, in which the settlement agreement was incorporated by reference in a Nevada divorce decree and sued on in Connecticut, with recovery by the plaintiff. In *Hooker* v. *Hooker,* 130 Conn. 41, 47, it was held that contracts between husband and wife in settlement of their property affairs, in view of divorce proceedings instituted or determined upon, if approved by the court with full opportunity for scrutiny before the decree is entered, are not against public policy. In *Lasprogato* v. *Lasprogato,* 127 Conn. 510, 514, it was held that such contracts are enforceable by remedies no different from remedies provided by law for the breach of any other contract. In *Weil* v. *Poulsen,* 121 Conn. 281, a separation agreement

made by the parties while resident in New York was followed by a divorce in Denmark, evidently the marriage situs, and the decree incorporated a spurious contract by the defendant in fraud of the plaintiff. Our court upheld the original contract, which was not part of the divorce decree. The validity of the divorce was not questioned.

We are not concerned here with the cases in which our Superior Court found a foreign divorce decree invalid, and the marriage contract between the parties, with all the incidents thereto, was still determined to subsist. See, e.g., *State* v. *Cooke,* 110 Conn. 348; *Blackwell's Application for Change of Name,* 5 Conn. Sup. 190; *Chetelat* v. *Chetelat,* 4 Conn. Sup. 209; *Ringhoffer* v. *Ringhoffer,* 1 Conn. Sup. 35.

The suit brought by the plaintiff was in contract to enforce a partial breach by the defendant. The observation of the trial court that the contract was unenforceable because it omitted several important items and, therefore, did not adjust and dispose of all the related property interests of the parties is not apropos of the precise issue presented by the pleadings. This issue was whether the plaintiff was entitled to the amount for support and maintenance agreed upon. The ability or inability of the defendant to pay was not raised. According to his own testimony, he was earning $125 a week at the time of trial. The omission of any mention of real property was deliberate. The defendant made no claim to any part of it. His possible liability on a mortgage note or notes could be easily rectified under the provisions of the contract itself. Furthermore, the court cannot make a contract for the parties. Whether an agreement is wise or unwise is not ordinarily a legitimate subject of inquiry in a court of legal or equitable jurisdiction; *Parmelee* v. *Cameron,* 41 N.Y. 392, 395; unless the contract annexed

to and referred to in the judgment of a foreign court is a fraudulent substitute for the original contract, in which case our courts will entertain suit on the original. *Weil* v. *Poulsen,* supra, 285.

We do not agree with the court's conclusion that the agreement was not designed or entered into for the sole purpose of settling amicably the property affairs of the parties. The evidence appears to be to the contrary. It is admitted that certain transfers of personal property and shares of stock were made at or about the time of the contract or thereafter in reliance on the contract provisions. There had been substantial performance by each party. It is true that at the time of the agreement divorce was contemplated and already independently determined upon. This did not make the contract objectionable as against public policy. There is no evidence that the contract was the price of the defendant's consent to the divorce by the plaintiff. See *Rifkin* v. *Rifkin,* 155 Conn. 7, 9; *Maisch* v. *Maisch,* 87 Conn. 377, 383; *Seeley's Appeal,* 56 Conn. 202, 206.

We have noted before that no attack was made by the defendant on the divorce decree, nor did the court conclude that the divorce was invalid. No claim is advanced that the laws of the state of Chihuahua in the republic of Mexico were not complied with. In *Rifkin* v. *Rifkin,* supra, 11, our Supreme Court declared: "In this proceeding, the validity of the Arkansas divorce decree is not in issue, nor is it any part of the public policy of Connecticut to protect the divorce courts of Arkansas against collusion or misrepresentation." Under the mandate of our federal and state constitutions, a judgment rendered by a court of a sister state is entitled to full faith and credit. *Koster* v. *Koster,* supra, 712, and cases cited. It was also there held that "[t]o the extent that the total amount of the instalments for support and alimony were due and payable, the

judgment was final and conclusive. It remained only for the trial court by mathematical computation to determine that amount." See *Nowell* v. *Nowell,* 157 Conn. 470, 481; *Schaeffer* v. *Schaeffer,* 128 Conn. 628, 631, 635. The foregoing rule as to giving full faith and credit to judgments applies only as between the states of our union. A similar result is achieved respecting judgments of foreign courts by the operation of what is called the "comity of nations." 16 Am. Jur. 2d, Conflict of Laws, §§ 4, 5; 3 Nelson, Divorce and Annulment §§ 33.10, 33.14 (2d Ed.); Schouler, Divorce Manual § 390.2 (a), p. 67 (Sup. 1951 & new ch. 36A).

The mere fact that a divorce was granted by a foreign court in a country in which the parties are not domiciled is not itself controlling, at least so far as concerns the enforcement of a prior separation and property agreement of the parties. *Weil* v. *Poulsen,* 121 Conn. 281, 283 (Danish divorce). "[D]omicile is not intrinsically an indispensable prerequisite to jurisdiction. [Citations omitted.] . . . The State or country of true domicile has the closest real public interest in a marriage but, where a New York spouse goes elsewhere to establish a synthetic domicile to meet technical acceptance of a matrimonial suit, our public interest is not affected differently by a formality of one day than by a formality of six weeks." *Rosenstiel* v. *Rosenstiel,* 16 N.Y.2d 64, 73 (Mexican divorce). In *Fabrikant* v. *Fabrikant,* 19 N.Y.2d 154, 159, in which the factual situation was similar to that in the instant case, the separation agreement for support payments was enforced as to accrued amounts, the court holding that "[t]he fact that the divorce decree was granted by a Mexican court is immaterial." See *Lappert* v. *Lappert,* 20 N.Y.2d 364 (Mexican divorce). In view of the foregoing, it is our opinion that the judgment on the first count was erroneous.

The plaintiff in her second count seeks to recover the legal expenses she incurred in the maintenance of this action. It is clear from the examination of the judgment of the court at Chihuahua that no costs and no alimony were awarded. The plaintiff has cited a number of Connecticut cases purporting to sustain her position. These concern the allowance, modification or denial of alimony pendente lite or counsel fees to the female spouse in the pursuit or defense of a divorce suit or the appeal flowing therefrom. The plaintiff has failed to distinguish between alimony and counsel fees permitted in divorce actions under General Statutes § 46-21. The Superior Court has exclusive jurisdiction of all complaints for divorce. "Whether to allow counsel fees, and if so in what amount, is a matter which, like the fixing of alimony, calls for the exercise of a judicial discretion. *Felton* v. *Felton,* 123 Conn. 564, 567 . . . ." *Krasnow* v. *Krasnow,* 140 Conn. 254, 262; see also such cases cited by the plaintiff as *Saunders* v. *Saunders,* 140 Conn. 140, 144; *England* v. *England,* 138 Conn. 410, 417; *Steinmann* v. *Steinmann,* 121 Conn. 498; *Valluzzo* v. *Valluzzo,* 104 Conn. 152, 155; *Morgan* v. *Morgan,* 103 Conn. 189, 197; and also *Christoni* v. *Christoni,* 156 Conn. 628; *Valando* v. *Valando,* 27 Conn. Sup. 295.

"As a general rule attorney's fees are not recoverable as an item of damage unless such recovery is allowed by statute or contract." *State* v. *Bloomfield Construction Co.,* 126 Conn. 349, 359. Contracts between husband and wife, like that in the present case, are enforced by actions brought upon the contracts themselves, and the remedies are no other than or different from the remedies provided by law for the breach of any other contract. *Lasprogato* v. *Lasprogato,* 127 Conn. 510, 514. The plaintiff has pointed to no statute or authority in Connecticut to support her claim for the award of counsel fees in

the present suit. The denial of the claim by the trial court was not in error.

There is error in part, the judgment is set aside as to the first count only, and the case is remanded with direction to render judgment for the plaintiff to recover damages, being the principal sum due on the contract to the date of the original judgment with interest to the date of the new judgment.

In this opinion Jacobs and Kinmonth, Js., concurred.