BETTY LOU BAKER *v.* ROBERT C. BAKER

SPEZIALE, C. J., PETERS, HEALEY, ARMENTANO and SHEA, JS.

Argued March 9—decision released June 8, 1982

*Samuel V. Schoonmaker III,* with whom were *Jonathan D. Elliott* and, on the brief, *David L. deCourcy, Garry R. Lane,* and *David I. Bower,* for the appellant (defendant).

*Saul Kwartin,* for the appellee (plaintiff).

SPEZIALE, C. J. This is an appeal by the defendant-husband from the denial of a post-judgment motion to enforce a pretrial agreement between the parties. The dissolution of marriage judgment itself has not been appealed. The defendant contends that the trial court erred in interpreting the pretrial agreement in such a way as to render it unenforceable in the circumstances of this case. Before we can reach that issue, however, we must first determine whether the pretrial agreement, which by its terms specifically provided that it be concealed from the trial court, is void as against public policy.

This dissolution of marriage action was commenced by the plaintiff in December, 1977. In July,

1978, the parties entered into the agreement which is the subject of this appeal. This agreement[1] provided that the defendant would relinquish to the plaintiff his right to acquire a one-third interest in a shopping center in Hornell, New York, which interest the defendant obtained through business dealings with the plaintiff's family. In return, the plaintiff agreed that the defendant would receive a credit of $312,500, the value of his interest in the shopping center, "against any amounts paid or payable by the Defendant to the Plaintiff in any given calendar year [as a result of the anticipated dissolution of marriage judgment] to the extent that said payments exceed $110,000 during such year. Said payments shall include lump sum alimony,

---

[1] The full agreement between the parties was as follows:

"AGREEMENT AND STIPULATION

"The undersigned stipulate and agree as follows:

"1. The Defendant shall be entitled to a $312,500 credit against any final judgment as a result of his relinquishment to Plaintiff of his right to acquire an interest in the Hornell Shopping Center, against any amounts paid or payable by the Defendant to the Plaintiff in any given calendar year to the extent that said payments exceed $110,000 during such year. Said payments shall include lump sum alimony, periodic alimony, unallocated alimony and support and child support. As to any lump sum payment payable in less than five (5) years, the total of such lump sum payment shall be divided into five (5) equal payments for the computation of the above: For example: A lump sum of $600,000 payable over a three (3) year period shall be recalculated for purposes hereof to be $120,000 a year for each of five years. The credit provided herein shall not be deemed to be taxable to the wife.

"2. This agreement shall not be referred to in any way by the parties in connection with divorce or dissolution of marriage proceedings but shall be filed with the Court in such proceedings at any time after the entry of final judgment. The Plaintiff in filing her financial affidavit in this action may show the Hornell Shopping Center as an asset valued after deducting the credit without reference to the credit. Neither party shall introduce any evidence to the Court of the nature or the amount of the credit except as provided herein.

periodic alimony, unallocated alimony and support and child support." Significantly, the agreement provided that the existence and terms of the agreement were to be concealed from the court and that it was to be filed with the court only "after the entry of final judgment." The agreement also specifically provided that "[t]he Plaintiff in filing her financial affidavit in this action may show the Hornell Shopping Center as an asset valued after deducting the credit without reference to the credit." Thereafter, the plaintiff filed a financial affidavit which undervalued the Hornell property by $312,500. The defendant also filed an affidavit which, in listing the plaintiff's assets, similarly undervalued the Hornell property.

"3. If for any reason whatsoever the lease with K-mart Corporation does not take effect and the lessee thereunder does not take possession of its demised premises and pay the first installment of rent, then, and in such event, the dollar amount set forth in the above paragraph 1 shall not be applicable and the parties shall be governed thereafter by their present agreement as to Hornell.

"4. This stipulation shall bind the heirs, executors, administrators and personal representatives of the respective parties hereof.

Betty Lou Baker, Plaintiff
_____

Silverberg, Marvin & Swaim, P.C.
_____
Attorneys for Plaintiff

Robert C. Baker
_____

Cummings & Lockwood
_____
Attorneys for Defendant

Loomis J. Grossman
_____

Loomis J. Grossman, Jr.
_____

Richard A. Grossman                    "
_____

In July, 1979, prior to trial a dispute arose over the application of the agreement and counsel for the plaintiff attempted to depose the defendant concerning the terms of the agreement.[2] On July 20, 1979, the parties appeared before the court, *Novack, J.,*[3] on the plaintiff's motion to compel the defendant to answer questions about the agreement. The parties allege that Judge Novack agreed that the existence and terms of the agreement were not to be divulged to the trial judge until after judgment. We note, however, that there is no indication in the record before us of any approval of such a procedure by the court.[4]

The dissolution of marriage action was tried in October, 1979 by the *Hon. William L. Tierney, Jr.,* state referee. Judgment was rendered on February 14, 1980. The judgment dissolved the marriage, ordered joint custody of the minor children, adopted the defendant's proposal regarding support for the children, but awarded no alimony. The trial court concluded, however, for reasons not relevant here, that the plaintiff was entitled to a share of the defendant's assets. Consequently, the defendant was ordered to convey to the plaintiff his interest in two commercial properties in Tarrytown

---

[2] The dispute arose because the defendant filed a financial affidavit which appeared to indicate that he had gratuitously transferred his interest in the Hornell property to the plaintiff. The defendant refused to answer questions about the transfer on the basis of the concealment required by the agreement.

[3] As hereinafter set forth, Judge Novack was not the trial judge.

[4] Judge Novack simply denied the plaintiff's motion to compel and ordered the defendant to file a corrected financial affidavit. The record reveals no decision or even suggestion by Judge Novack concerning the agreement itself. The transcript of the hearing before Judge Novack does suggest, however, that the matter was discussed in chambers.

and Webster, New York.[5] As previously noted, no appeal was taken from the dissolution of marriage judgment itself.

On April 24, 1980, the defendant filed a motion to implement the terms of the pretrial agreement between the parties. On September 30, 1980, the trial court, after expressing displeasure that the agreement had been concealed from it,[6] denied the motion on the ground that the agreement by its own terms was unenforceable. The trial court concluded that the agreement called for the off-setting credit only if the award of alimony was above a certain amount. It, therefore, held that the agreement was unenforceable because the judgment only divided property and did not award alimony. The defendant claims on appeal that the trial court erred by distinguishing the division of property from lump sum alimony. We need not reach the issue urged upon us by the defendant, however, because we conclude that the agreement is void and unenforceable as violative of public policy.

It is well settled in Connecticut that agreements, such as the one involved in this case, "when made not to facilitate divorce but solely as an amicable

---

[5] There was a wide disparity in the parties' valuation of these properties. The defendant valued these properties at $672,935, while the plaintiff valued them at $1,834,610.

[6] During the hearing on the defendant's motion to implement the agreement the trial court stated: "You see one of the failings in this thing, is that the Court had no knowledge of it whatsoever. And, with knowledge of this in view the Court could have made an allocation to cover this situation. Now you've drawn this agreement behind the Court's back. And, you're attempting to enforce it now on a decision that the Court made with absolutely no knowledge of the agreement." Similar language appears in the court's memorandum of decision on the defendant's motion.

settlement of property affairs, and made in view of divorce proceedings already independently instituted or determined upon, are not necessarily contrary to public policy and void, *unless concealed from the court.* If submitted to and approved by the court with full opportunity for scrutiny before the decree, they are unobjectionable; but, if *concealed* from the court, they are contrary to public policy and will not be enforced unless in extreme cases where the refusal to do so would assist in the perpetration of an intentional fraud." (Emphasis added.) *Maisch* v. *Maisch,* 87 Conn. 377, 383, 87 A. 729 (1913). We have often cited this rule with approval. *Rifkin* v. *Rifkin,* 155 Conn. 7, 9–10, 229 A.2d 358 (1967); *Whitney* v. *Heublein,* 145 Conn. 154, 160, 139 A.2d 605 (1958); *Koster* v. *Koster,* 137 Conn. 707, 711, 81 A.2d 355 (1951); *Hooker* v. *Hooker,* 130 Conn. 41, 47, 32 A.2d 68 (1943); *Lasprogato* v. *Lasprogato,* 127 Conn. 510, 513, 18 A.2d 353 (1941); *Felton* v. *Felton,* 123 Conn. 564, 568, 196 A. 791 (1938); *Weil* v. *Poulsen,* 121 Conn. 281, 286, 184 A. 580 (1936); *Mills* v. *Mills,* 119 Conn. 612, 620, 179 A. 5 (1935).

"The safeguard for the public policy against collusive separation agreements rests in the process by which separation agreements are incorporated into decrees of dissolution of marriage. Under our statutes, a court has an affirmative obligation, in divorce proceedings, to determine whether a settlement agreement is 'fair and equitable under all the circumstances.' General Statutes § 46b-66. The presiding judge has the obligation to conduct a searching inquiry to make sure that the settlement agreement is substantively fair and has been knowingly negotiated. *Monroe* v. *Monroe,* 177 Conn. 173, 183–84, 413 A.2d 819, cert. denied, 444 U.S.

801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). With such judicial supervision, private settlement of the financial affairs of estranged marital partners is a goal that courts should support rather than undermine. *Guyton* v. *Guyton,* 17 Ill. 2d 439, 444, 161 N.E.2d 832 (1959); *Paxton* v. *Paxton,* 201 Neb. 545, 547, 270 N.W.2d 900 (1978); *Viles* v. *Viles,* 14 N.Y.2d 365, 368–69, 251 N.Y.S.2d 672, 200 N.E.2d 567 (1964) (dissenting opinion); Lindey, Separation Agreements and Ante-Nuptial Contracts (2d Rev. Ed. 1978) p. 3-23." *Hayes* v. *Beresford,* 184 Conn. 558, 567–68, 440 A.2d 224 (1981).

The agreement in this case by its own terms specifically provided that it be concealed from the trial court. It is contrary to public policy and, therefore, void and unenforceable.

The defendant suggests that any concealment problem was overcome by the disclosure of the agreement to Judge Novack as part of the hearing on the plaintiff's motion to compel the defendant to answer questions about the agreement. Such an argument, however, misses the mark. The point of the rule discussed above is the disclosure of the agreement to the *trial* judge so that he or she may reach an informed judgment based upon an accurate and complete record. It is irrelevant that some other judge may have been aware of or even approved of such an agreement, because the agreement is against public policy so long as it is concealed from the trial court.

The problems in this case, however, go deeper than just the improper concealment of the agreement from the trial court. As a consequence of the agreement, both parties filed inaccurate and mis-

leading financial affidavits with the trial court. The effect of these affidavits was to misinform the court as to the actual value of the assets held by each party. The significance of such misinformation cannot be ignored where, inter alia, the amount involved is such a large percentage of the final property disposition. Thus, the effects of the parties' concealment from the court cannot be remedied fully by the mere voiding of their agreement.

Although the trial court expressed proper concern regarding the actions of the parties, the court erred by not taking the appropriate action. The trial court in a dissolution of marriage action sits as a court of law and of equity and it is incumbent upon the parties to disclose fully to the court all relevant information. Thus, when it became clear to the trial court that the agreement had been concealed from it and that the parties had filed inaccurate and misleading financial affidavits, the court, at the very least, should have ordered sua sponte that the judgment be opened for the purpose of rehearing the financial and property issues.

There is error and the case is remanded to the trial court with direction that the dissolution of marriage judgment be set aside as to the financial and property dispositions and that a new trial be ordered on these issues.[7]

In this opinion the other judges concurred.

---

[7] The concealment of the agreement and related financial information from the trial court did not affect the dissolution judgment as to the irretrievable breakdown of the marriage or the custody and support of the children. There is, therefore, no reason to disturb that part of the dissolution judgment.